# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-IA-01049-SCT

*AMERICAN STATES INSURANCE COMPANY*

*v.*

*ELLIS R. ROGILLIO*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/29/2008 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | W. WRIGHT HILL, JR. |
| | JAN F. GADOW |
| ATTORNEYS FOR APPELLEE: | HOLLIS McGEHEE |
| | RONALD L. WHITTINGTON |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED AND REMANDED - 06/04/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., DICKINSON AND LAMAR, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This interlocutory appeal concerns the denial of a motion to set aside a default judgment. Ellis Rogillio filed a complaint against American States Insurance Company ("American States"), Mississippi Farm Bureau Casualty Insurance Company ("Farm Bureau"), and Bi-County Insurance Agency ("Bi-County"). American States failed to file an answer or otherwise defend the action for more than four months after service of the complaint. As a result, Rogillio obtained a default judgment. Thereafter, American States

filed an answer and a motion to set aside the default judgment, which the trial court denied. American States now appeals to this Court.

## FACTS

¶2.     On March 26, 2004, Rogillio was seriously injured while driving on Highway 10 in Tangipahoa Parish, Louisiana.  Rogillio was traveling eastbound when a large, seventy-pound metal vise was separated from a vehicle traveling westbound.  The vise flew into the eastbound lane of the highway and struck Rogillio, severing his right arm just below the shoulder socket.  Rogillio underwent several surgical operations to reattach his arm and to allow him to regain some use of it.  He also suffered spinal injuries from the accident.  The driver of the vehicle carrying the vise was never identified.

¶3.     At the time of the accident, Rogillio was employed by J & N Timber, Inc. ("J & N Timber"), and was working within the scope of his employment.  J & N Timber is a timber company owned by William B. Netterville.  In addition to owning J & N Timber, Netterville had also cofounded a corporation called Clover Hill, LLC ("Clover Hill"), which owned a 2002 Ford F-150 truck.  When Rogillio was injured, he was driving this particular truck. Clover Hill had an insurance policy with American States, and this policy provided for a maximum of $25,000 in uninsured motorist coverage.  Rogillio made a claim under the Clover Hill policy, and in 2005, American States approved the claim and paid Rogillio $25,000. J & N Timber also had an insurance policy with American States, which provided a maximum of $600,000 in uninsured motorist coverage – $100,000 for each of the six automobiles insured under the policy.  This insurance policy is the subject of this case.

2

¶4. In April 2006, Rogillio made a claim under the J & N Timber policy. Keith Anderson, an American States claims specialist, corresponded with Rogillio's counsel for several months regarding this claim. Ultimately, Anderson informed Rogillio that his claim would be denied. Subsequently, on March 9, 2007, Rogillio filed a complaint against Farm Bureau, American States, Bi-County, and John Does 1-5. Rogillio claimed that he was covered by the J & N Timber policy and that he was legally entitled to recover damages in the amount of the liability limits of the policy. On March 12, 2007, American States' registered agent, C. T. Corporation, was served with Rogillio's complaint. American States concedes that it was properly served. On March 15, 2007, Anderson and Rogillio's counsel spoke via telephone regarding Rogillio's lawsuit. The exact contents of this discussion are disputed.

¶5. On July 17, 2007, Rogillio filed an application for an entry of default, submitting an affidavit citing the fact that American States had failed to answer or otherwise defend in the action. On the same day, the circuit clerk entered an entry of default. Rogillio filed a motion for default judgment. On July 18, 2007, the trial court entered a default judgment against American States without holding a hearing.

¶6. On August 6, 2007, American States filed an answer and affirmative defenses. On August 23, 2007, American States filed a motion to set aside the default judgment. American States argued that it had defaulted because of a "simple clerical error." American States claimed that, under the proper legal standard, the default judgment should be set aside because American States had a legitimate reason for defaulting, because it had a colorable defense to the merits of Rogillio's claim, and because Rogillio would not suffer prejudice if the default judgment were set aside. In the alternative, American States asserted that the

3

default judgment was void because Rogillio did not provide American States with three days' notice of his motion for default judgment. On September 4, 2007, Rogillio filed a response to the motion to set aside, arguing that the default judgment should not be set aside because American States did not have a legitimate reason for defaulting, because it did not have a colorable defense, and because Rogillio would suffer substantial prejudice if the default judgment were set aside.

¶7. Also on September 4, 2007, at a hearing before the trial court, both sides presented their arguments regarding the motion to set aside the default judgment. The trial court took the matter under advisement and issued an order on May 29, 2008 denying the motion to set aside the default judgment. In its order, the trial court found that the default judgment had been entered properly and that

> the failure of the defendant to respond to the complaint was not due to accident or mistake, nor any conduct of the plaintiff or plaintiff's counsel, but to poor business practices of the defendant and complete inattention to the complaint. . . . [T]he court finds there is no showing of good cause.

The trial court also stated that "the defendant is entitled to a full defense on the issue of damages, including a jury trial. It is therefore ordered that this cause shall proceed on the issue of damages only, in all respects." Subsequently, American States timely filed a petition for interlocutory appeal, which this Court granted.

## ANALYSIS

¶8. This Court reviews a trial court's decision regarding a motion to set aside a default judgment for an abuse of discretion. *See, e.g.*, ***Guar. Nat'l Ins. Co. v. Pittman***, 501 So. 2d 377, 388 (Miss. 1987). Although "default judgments are not favored in the law, it does not

4

follow that a party seeking relief from a default judgment is entitled to that relief as a matter of right." ***Pointer v. Huffman***, 509 So. 2d 870, 875 (Miss. 1987); *see also* ***Pittman***, 501 So. 2d at 387-88 (citations omitted). This Court has stated that "where there is a reasonable doubt as to whether or not a default judgment should be vacated, the doubt should be resolved in favor of opening the judgment and hearing the case on its merits." ***McCain v. Dauzat***, 791 So. 2d 839, 843 (Miss. 2001) (quoting ***Sw. Sur. Ins. Co. v. Treadway***, 74 So. 143, 146 (Miss. 1916)). Nevertheless, this Court has also stated that "[w]e will not reverse unless convinced that the Circuit Court has abused its discretion." ***H & W Transfer & Cartage Serv., Inc. v. Griffin***, 511 So. 2d 895, 899 (Miss. 1987); *see also* ***Bailey v. Georgia Cotton Goods Co.***, 543 So. 2d 180, 182 (Miss. 1989) (citations omitted) ("The existence of trial court discretion, as a matter of law and logic, necessarily implies that there are at least two differing actions, neither of which if taken by the trial judge will result in reversal.").

## I.     Whether the Trial Court Erred in Denying the Defendant's Motion to Set Aside the Default Judgment.

¶9.     The trial court's "discretion must be exercised in accordance with the provisions of Rules 55(c) and 60(b) as well as the supplementary criteria given validity in the decisions of this Court." ***Pittman***, 501 So. 2d at 388. Mississippi Rule of Civil Procedure 55(c) states: "For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Miss. R. Civ. P. 55(c). Mississippi Rule of Civil Procedure 60(b) states, in relevant part:

> (b) Mistakes; inadvertence; newly discovered evidence; fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

5

(1) fraud, misrepresentation, or other misconduct of an adverse party;
(2) accident or mistake;
(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
(6) any other reason justifying relief from the judgment.

Miss. R. Civ. P. 60(b).

¶10. This Court has noted that

[a]scertaining the meaning of the provisions of Rule 55(c) and Rule 60(b)(5) and (6) with any degree of precision simply may not be done for the language is hopelessly open textured. A consideration of the criteria of those rules together boils down almost to a balancing of the equities.

*Pittman*, 501 So. 2d at 388. As a result, this Court applies a three-prong balancing test when determining whether a trial court properly decided a motion to set aside a default judgment. *Id.*; *see also Stanford v. Parker*, 822 So. 2d 886, 887-90 (Miss. 2002). In deciding whether to set aside a default judgment, the trial court must consider

(1) the nature and legitimacy of the defendant's reasons for his default, i.e., whether the defendant has good cause for default, (2) whether [the] defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set aside.

*H & W Transfer & Cartage Serv., Inc.*, 511 So. 2d at 898; *see also Pittman*, 501 So. 2d at 388.

A.      The Nature and Legitimacy of the Defendant's Reasons for Default

¶11. American States argues that all three prongs of the balancing test weigh in favor of setting aside the default judgment entered against it. The first prong concerns the defendant's

6

reasons for defaulting. American States claims that it has a legitimate reason for its default. American States concedes that its registered agent was properly served by Rogillio. It claims that the support staff at its home office in Seattle, Washington committed an "inadvertent clerical error" by placing Rogillio's summons and complaint in the claims file for the Clover Hill policy rather than the claims file for the J & N Timber policy. American States explains that it was first informed of Rogillio's lawsuit by a representative of its codefendant Bi-County, and that this representative provided a courtesy copy of the complaint to American States on March 14, 2007. American States further contends that, although Anderson later saw Rogillio's complaint in the Clover Hill claims file, he assumed it was the courtesy copy of the complaint provided by Bi-County and that American States had still not been officially served by Rogillio. American States asserts that it was only when counsel for Farm Bureau informed American States of the default judgment on August 2, 2007 that it realized that it had been served, had failed to answer, and was, therefore, in default.

¶12.   This Court has found that similar excuses do not constitute bona fide excuses. In *Pointer v. Huffman*, the defendant, after being served, mailed information regarding the lawsuit to "the proper company officers," but took no further action until discovering that a default judgment had been entered. *Pointer*, 509 So. 2d at 871, 876. The defendant argued that "default was unintentional and was the result of his complete reliance on his insurance carrier to take all necessary action." *Id.* at 876. The trial court noted that, despite being an "astute businessman with years of experience dealing with insurance claims and litigation," the defendant never took any steps to determine whether the papers were received or whether an answer had been filed. *Id.* The trial court denied the defendant's motion to set aside the

7

default judgment. *Id.* at 872. On appeal, this Court concluded that "[t]o be sure, [the defendant] could have been more diligent in his actions to defend this suit. The trial court, in the exercise of his discretion, so held, and this Court finds no abuse of this discretion." *Id.* at 876.

¶13. In *H & W Transfer & Cartage Service, Inc.*, the defendant, after being served with substituted service, delivered copies of the summons and complaint to its insurance agent, who delivered them to the defendant's liability insurance carrier. *H & W Transfer & Cartage Serv., Inc.*, 511 So. 2d at 896. As in *Pointer*, the defendant then took no further action until it was informed that a default judgment had been entered. *Id.* In commenting on the defendant's lack of diligence, this Court stated that the defendant prudently forwarded the summons and complaint to its insurance agent upon receipt, but "[i]mprudently, [the defendant] thereafter did nothing, made no follow-up inquiry, and for all practical purposes let the matter drop until some five months later when it found out about the default judgment." *Id.* at 899. This Court concluded that the defendant's "story" did not amount to good cause justifying a default under the first prong of the balancing test. *Id.*

¶14. In this case, the trial court found American States' excuse to be inadequate. At the hearing before the trial court, counsel for American States characterized the reason for default as

> a simple mistake by Mr. Anderson. It was a simple mistake by someone in the home office putting the actual served copy of the complaint in the 2004 Clover Hill file, as opposed to putting it in the active J & N file. But that was an honest mistake. . . . I think the reasons for the default are simple neglect – negligence, a clerical error in putting the claim – the summons and the complaint in the wrong file, but certainly not a bold face [sic] attempt just to

8

ignore the summons and complaint and ignore the plaintiff's lawsuit on a claim that they had denied.

After arguments from both sides, the following exchange occurred:

THE COURT: All right. Mr. Hill [counsel for American States] what about this? This does sound pretty bad now.

MR. HILL: Well, Your Honor –

THE COURT: Well, let me say this: I've set aside default judgments in the past and everything, but why should – this case – this sounds bad.

MR. HILL: Yeah. What happened, Your Honor, again, was: The first copy that Mr. Anderson got was the courtesy copy. He didn't know at that time that they had been officially served with the complaint. When American States was served –

THE COURT: Isn't that enough to check further, I mean to go a little bit further? Why aren't you sitting right there with this date checking when the statute runs, checking to see if a lawsuit had been filed or something? I'm just saying that this looks bad. This looks bad. This is one of the worst ones that I've seen.

Shortly thereafter, when discussing Anderson's failure to monitor the status of Rogillio's lawsuit, the trial court stated: "This just doesn't add up. This doesn't add up."

¶15. This Court agrees. American States' excuse for defaulting defies logic. Misfiling the summons and complaint does not explain how American States failed to answer it. American States does not claim that it did not receive the complaint, or that it did not recognize or understand the import of a summons and complaint. Based on the evidence in the record and the relevant legal precedent, this Court finds that the first prong of the balancing test weighs in favor of Rogillio.

**B. Whether the Defendant Has a Colorable Defense to the Merits of the Claim.**

9

¶16. The second prong of the balancing test asks whether the defendant has a colorable defense to the merits of the plaintiff's claim. *See, e.g.*, **Pittman**, 501 So. 2d at 388. With regard to the second prong, this Court has held that "[i]f any one of the three factors in the balancing test outweighs the other in importance, this is the one." **Bailey**, 543 So. 2d at 182; *see also* **Stanford**, 822 So. 2d at 888 (quoting **Allstate Ins. Co. v. Green**, 794 So. 2d 170, 174 (Miss. 2001)) (stating that this Court has "encouraged trial courts to vacate a default judgment where 'the defendant has shown that he has a meritorious defense'").

¶17. American States argues that Rogillio is not covered under the J & N Timber policy. The policy states that six vehicles – a 2004 Ford F-150, a 2001 Ford Expedition, a 1998 Ford Ranger, a 2000 Ford pickup, a 2003 Ford Crown Victoria sedan, and a 2003 Lincoln Towncar sedan – are covered under it. The policy also includes "Drive Other Car" coverage for certain individuals when they are driving cars other than the six cars specifically listed. The only individuals listed under "Drive Other Car" coverage are William B. Netterville and Vicki Netterville. Rogillio is not listed under the "Drive Other Car" coverage and was not driving any of the vehicles specified in the J & N Timber policy at the time of the accident. Thus, it is arguable that, based on the excerpts of the J & N Timber policy included in the record, American States has a colorable defense to the merits of Rogillio's claim.

¶18. However, we note that it is unclear whether American States would prevail on the merits by asserting this defense. The record includes a short and long version of the J & N Timber policy. The short version of the insurance policy, which is what American States provided to Rogillio when he requested a copy of the policy prior to filing his complaint,

10

includes a document with a Safeco Insurance[1] logo at the upper left corner of the page. This

document states:

> Dear Valued Policyholder,
> We appreciate the opportunity to write your commercial auto coverage. Please take a minute to review your policy.
> Your policy has been issued based on the drivers listing below. In order to insure that your policy is issued with the most current information, please review this list and update as necessary. Include employees who drive their own vehicles on company business or anyone who will drive an insured vehicle. Contact your independent agent to advise of any changes.

The document then includes a list of six drivers, including Ellis Rogillio. American States

argues that the attachment of this document was accidental. American States asserted in its

motion to set aside the default judgment that "[w]hen printing the policy to provide to

Plaintiff and his counsel, in an effort to conserve paper, American States inadvertently

attached [the] document." American States did not explain how attaching additional

documents to an insurance policy conserves paper. American States contends on appeal that

> this document is clearly not part of a policy or policy application, but a separate and subsequent letter written to the named insured, J&N Timber, Inc., simply to confirm those persons who would potentially be using a scheduled insured vehicle so that American States could evaluate and assess its risk and the premium to be charged for insuring that risk.

---

[1] The relationship between American States and Safeco Insurance is not clear from the record. The first page of the J & N Timber policy has a Safeco Insurance logo at the upper left corner of the page and states "American States Insurance Company" at the top of the page. The "Drive Other Car" coverage documents also have Safeco Insurance logos at the upper left corners. American States cites an affidavit in the record from a Safeco Insurance Company underwriter in order to explain the J & N Timber policy papers. However, American States does not clarify its relationship to Safeco Insurance. Although the exact relationship between the two corporate entities is unclear, American States does not argue that the J & N Timber policy was issued by an insurance company other than itself.

11

American States provides an affidavit by a Safeco Insurance underwriter that states that the document listing Rogillio as a driver has nothing to do with the "Drive Other Car" coverage under the J & N Timber policy, and that Rogillio is not insured under the policy. American States claims on appeal that the underwriter's "testimony is undisputed." However, Rogillio certainly disputed this fact in the pleadings and at the hearing and continues to dispute it on appeal. Rogillio maintains that the attachment of the document listing him as a driver creates an ambiguity in the insurance policy, which should be interpreted against the insurer.

¶19. The document in question clearly states that "[y]our policy has been issued based on the drivers listing below." In addition, although American States argues that the document was mistakenly attached to the short version of the policy when Rogillio requested a copy of the policy prior to filing suit, Rogillio rightly points out on appeal that the document also appears in the middle of the long version of the insurance policy that is included in the record.

¶20. It is well-established that any ambiguity in an insurance policy is interpreted in favor of the insured as the nondrafting party. *See, e.g.*, **Crum v. Johnson**, 809 So. 2d 663, 666 (Miss. 2002); **J&W Foods Corp. v. State Farm Mut. Auto. Ins. Co.**, 723 So. 2d 550, 552 (Miss. 1998). This Court is persuaded by Rogillio's argument regarding the ambiguity in the insurance policy and finds that the strength of American States' defense is questionable. Nevertheless, we are of the opinion that American States' defense does present a colorable defense to the merits of the Rogillio's claim for the purposes of the balancing test. Therefore, the second prong of the balancing test weighs in favor of American States.

**C. The Nature and Extent of Prejudice Which May Be Suffered by the Plaintiff if the Default Judgment is Set Aside**

¶21. The third prong of the balancing test concerns the prejudice, if any, suffered by the plaintiff if the default judgment is set aside. American States argues that Rogillio will suffer no prejudice if the default judgment is set aside because there are no witnesses whose memory will have suffered from the default and the resultant passage of time. American States further asserts that having to prove a claim against a defendant "is not what is meant by cognizable prejudice under this prong of the balancing test." *Bailey*, 543 So. 2d at 183.

¶22. Rogillio argues that he will suffer prejudice if the default judgment is set aside because such a decision will trigger the continuation of his litigation against Bi-County, which ended as a result of the default judgment against American States. Although Rogillio initially sued Farm Bureau, American States, and Bi-County, Farm Bureau was removed from the lawsuit, and Rogillio's claim against Bi-County was rendered moot after the default judgment was entered and upheld by the trial court. Therefore, Bi-County was released from the lawsuit. If the default judgment is set aside, Rogillio will have to continue its litigation against Bi-County in addition to proving its claims against American States. The fact that Rogillio will be forced to pursue litigation against Bi-County is a burden separate and distinct from the burden of proving the liability of American States, which this Court would not consider "cognizable prejudice" under the third prong. *Bailey*, 543 So. 2d at 183. Therefore, this Court finds that Rogillio will suffer prejudice if the default judgment is set aside.

¶23. Furthermore, as Rogillio argues, he will suffer prejudice because of the ongoing financial and emotional distress related to his severe injuries. This Court has found that the

13

fact that "the injured plaintiff is without a resolution to her claim for that period of time [i.e.,
the period of delay caused by the defendant's default]" constitutes prejudice. *Pittman*, 501
So. 2d at 388; *see also* *Stanford*, 822 So. 2d at 890 (finding that plaintiffs had suffered
substantial prejudice in part from the financial and emotional distress they suffered).
Rogillio filed his lawsuit against American States in March 2007. He perfected service upon
American States' designated agent and proceeded with the litigation as he should have.
Because of American States' carelessness and lack of diligence in defending the lawsuit,
Rogillio properly obtained a default judgment more than four months after service of the
complaint. American States filed a motion to set aside the default judgment more than one
month after the default judgment had been entered – three weeks after it discovered that a
default judgment had been entered against it and more than two weeks after it filed an answer
and affirmative defenses. The trial court denied American States' motion approximately nine
months after that. As this Court held in *H & W Transfer & Cartage Service, Inc.*, the
plaintiff "may have been subject to prejudice from the granting of the motion in the sense
that she would have been put to trial some months following the date when she would have
originally been able to obtain a trial setting had [the defendant] responded promptly." *H &
W Transfer & Cartage Serv., Inc.*, 511 So. 2d at 899. This Court finds that setting aside the
default judgment would certainly have caused prejudice to Rogillio.

¶24. Thus, two of the three prongs weigh in favor of Rogillio and against setting aside the
default judgment. We find, therefore, that the trial court did not abuse its discretion in
denying the motion to set aside the default judgment. Although the second prong weighs in
favor of American States, this Court has previously affirmed the trial court's denial of a

14

motion to set aside default judgment where the second prong weighed in favor of the defaulting party. *See, e.g.*, *Pittman*, 501 So. 2d at 388-89; *Stanford*, 822 So. 2d at 889-91. Additionally, we note that, while American States is now foreclosed from presenting any defenses as to liability, it will nevertheless be given an opportunity to contest the amount of unliquidated damages and raise any and all defenses it may have as to the damages claimed by the plaintiff. The trial court entered a partial default judgment as to liability. *See Pointer*, 509 So. 2d at 873-74; *Capital One Servs., Inc. v. Rawls*, 904 So. 2d 1010, 1018 (Miss. 2004). In entering the partial default judgment, the trial court expressly provided that "the defendant is entitled to a full defense on the issue of damages, including a jury trial. It is therefore ordered that this cause shall proceed on the issue of damages only, in all respects." Furthermore, as this Court stated in *Pittman*,

> [i]t may be that people will miss fewer trains if they know the engineer will leave without them rather than delay even a few seconds. Although we are not about to inaugurate a policy of entering irrevocable defaults where no answer has been filed by the thirty-first day, we are equally resolved that people know that the duty to answer must be taken seriously. At some point the train must leave.

*Pittman*, 501 So. 2d at 388-89.

¶25. American States argues in its rebuttal brief that the trial court abused its discretion by failing to consider the three-prong test. American States cites *State Highway Commission v. Hyman*, 592 So. 2d 952, 956 (Miss. 1991), *McCain v. Dauzat*, 791 So. 2d 839, 843 (Miss. 2001), *Clark v. City of Pascagoula*, 507 So. 2d 70, 77 (Miss. 1987), and *Bryant, Inc. v. Walters*, 493 So. 2d 933, 937 n.3 (Miss. 1986) in support of its argument. These cases are either distinguishable from the facts of this case or fail to support American States' argument.

In citing ***Hyman***, American States merely directs this Court to the application of the three-prong test in a case in which this Court ruled that the default judgment should have been set aside. ***Hyman***, 592 So. 2d at 956. American States does not explain how the facts in ***Hyman*** are at all analogous to the facts of this case. In ***Dauzat***, this Court remanded the case so that the trial court could consider the three prongs of the balancing test. ***Dauzat***, 791 So. 2d at 843. However, in ***Dauzat***, "the trial judge became perturbed with McCain and prematurely ended the hearing on the motion [to set aside the default judgment]." ***Id.*** This Court found that there was "strong evidence" that the trial court did not weigh the three factors. ***Id.*** In this case, it is clear that the trial court heard arguments from both sides regarding the application of the three-prong test during the hearing on September 4, 2007. The hearing was not prematurely ended, and the trial court took the matter under consideration for a significant period of time before entering an order denying the motion to set aside the default judgment. Although the trial court did not discuss the three-prong test in its order, there is no indication that the trial court failed to consider it in reaching its decision. In ***Clark***, this Court affirmed the order of the trial court, which "made no specific findings . . . but merely set aside the default judgments." ***Clark***, 507 So. 2d at 77. American States does not explain how ***Clark*** supports its argument that the trial court abused its discretion by failing to consider the three-prong test. Lastly, American States also does not explain how footnote three[2] from ***Bryant, Inc.*** supports its argument. Therefore, we find that American States'

---

[2] Footnote three states:

The circuit judge could also, under his discretionary power, have set the judgment aside on this particular ground under the facts of this case. Three

16

argument that the trial court abused its discretion and failed to consider the three-prong test is without merit.

***Mississippi Rule of Civil Procedure 60(b)***

¶26. We note that the result reached by applying the three-prong test in this case is consistent with Mississippi precedent regarding Mississippi Rule of Civil Procedure 60(b). Although the motion to set aside default judgment did not specify the subsection of Rule 60(b) under which the motion was being made, on appeal, American States argues that the default judgment should have been set aside for either accident or mistake under Rule 60(b)(2) or for any other reason justifying relief under Rule 60(b)(6).

¶27. This Court has stated that

> As a general rule, the "extraordinary relief" provided for by Rule 60(b), will be granted "only upon an adequate showing of exceptional circumstances," and gross negligence, ignorance of the rules, ignorance of the law, or carelessness on the part of the attorney will not provide sufficient grounds for relief.

---

> days after due date of the answer the plaintiff moved for and secured a default, and on the fourth day got a judgment. The case could not be tried until the August term of court. Motion to vacate the judgment was filed the first day of the term.
>
> Indeed, upon a showing by the defendant that he has a meritorious defense, we would encourage trial judges to set aside default judgments in a case where, as here, no prejudice would result to the plaintiff. The importance of litigants having a trial on the merits should always be a serious consideration by a trial judge in such matters. *We are unable to say, however, that the circuit judge abused his discretion in refusing to set aside the judgment* in this case on the particular ground of "accident or mistake."

***Bryant, Inc.***, 493 So. 2d at 937 n.3 (emphasis added).

17

*Accredited Sur. & Cas. Co. v. Bolles*, 535 So. 2d 56, 58 (Miss. 1988) (quoting *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984)). This Court has also stated that "we are obliged to ask why the mistake or inadvertence was not avoided." *Bolles*, 535 So. 2d at 58. Furthermore, a party "must make some showing that he was justified in failing to avoid mistake or inadvertance [sic]; gross negligence, ignorance of the rules, or ignorance of the law is not enough." *Stringfellow*, 451 So. 2d at 221 (citations omitted); *see also Bolles*, 535 So. 2d at 59 (citing *Stringfellow*, 451 So. 2d at 221) ("Ignorance, incompetence, or carelessness will not suffice."). In *H & W Transfer & Cartage Service, Inc.*, this Court stated that "[a]ssuming arguendo that the reason H & W did not answer timely was an accident or mistake within Rule 60(b)(2), we consider the first factor, the validity or cause for H & W's failure to answer." *H & W Transfer & Cartage Serv., Inc.*, 511 So. 2d at 899. The Court then applied the analysis under the first prong of the balancing test and concluded that H & W had not provided a valid reason for its failure to answer. *Id.*

¶28. American States has not made a showing that it was justified in failing to avoid the mistake or inadvertence that led it to default. American States does not provide any explanation for its failure to make the simple determination of whether or not it had been served. American States repeatedly claims that its default resulted from a "simple mistake" or an "inadvertent clerical error." This excuse is insufficient to explain the carelessness and lack of diligence that caused it to default. American States waited for four months to file an answer and more than four-and-a-half months to file a motion to set aside. It appears that American States may never have filed an answer or motion had it not been informed of the default judgment by counsel for Farm Bureau.

18

¶29.   As for Rule 60(b)(6), this Court has held that relief under that subsection "is reserved for exceptional and compelling circumstances.  It must be based on some other reason than the first five clauses, and it must be some ground which will justify relief from the final judgment." ***Bryant, Inc. v. Walters***, 493 So. 2d 933, 939 (Miss. 1986).  "Rule 60(b)(6) in the Mississippi Rules of Civil Procedure calls for an exceptional or compelling reason to set aside a default judgment in the absence of the other enumerated reasons." ***Stanford***, 822 So. 2d at 891.  As in ***Stanford***, this Court finds that American States has not demonstrated an exceptional or compelling reason to set aside the default judgment entered against it.

## II.   Whether the Default Judgment is Void for Failure to Comply with Mississippi Rule of Civil Procedure 55(b).

¶30.   American States argues in the alternative that the default judgment is void because Rogillio did not provide three days' notice to American States when it filed its motion for default judgment.  Rogillio maintains that three days' notice was not required because American States never made an appearance in the action.  Mississippi Rule of Civil Procedure 55(b) provides, in relevant part:

> In all cases the party entitled to a judgment by default shall apply to the court therefor.  If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing of such application.

Miss. R. Civ. P. 55(b).  Based on the plain language of Rule 55(b), we must determine whether or not American States made an appearance in this action.  This Court has held that "[t]raditionally, for an action to constitute an appearance, one had to file documents in or actually physically appear before a court." ***Holmes v. Holmes***, 628 So. 2d 1361, 1363 (Miss.

19

1993) (citations omitted). However, "those requirements have been relaxed considerably for Rule 55 purposes." *Holmes*, 628 So. 2d at 1363 (citations omitted). "Once a party has made an indicia of defense or denial of the allegations of the complaint such party is entitled to at least three days['] written notice of the application for default judgment." *Wheat v. Eakin*, 491 So. 2d 523, 525 (Miss. 1986). This Court has noted that "informal contacts between parties may constitute an appearance." *Holmes*, 628 So. 2d at 1364 (citing various cases in which written documents that were exchanged between parties or filed with the court, or conversations initiated by defendants' counsel, indicated an intent to defend the action and thus constituted an appearance).

¶31. This Court has decided several cases that are helpful in determining what constitutes an appearance for purposes of Rule 55(b). In *Wheat v. Eakin*, this Court found that the pro se defendant's answer entitled him to at least three days' written notice of the plaintiff's application for default judgment. *Wheat*, 491 So. 2d at 526. This Court found that "[w]hile the form and language of the appellant's response are less than desirable and more frank than customary, the appellant did state in short and plain terms his general denial of appellees' claims." *Id.* at 525. Therefore, this Court found that the defendant had appeared through his answer and that the plaintiff's failure to provide notice pursuant to Rule 55(b) justified reversal of the default judgment. *Id.* at 524-26.

¶32. In *Chassaniol v. Bank of Kilmichael*, the defendant filed an answer to the complaint, but failed to file a timely answer to the amended complaint. *Chassaniol v. Bank of Kilmichael*, 626 So. 2d 127, 129-30 (Miss. 1993). The plaintiff sought a default judgment without providing notice to the defendant. *Id.* at 130. The trial court entered a default

20

judgment, and this Court found that the trial court erred by refusing to set aside the default judgment because the defendant had appeared and the plaintiff failed to provide notice pursuant to Rule 55(b). *Id.* at 130, 132. This Court found that

> [b]oth the court and opposing counsel were on notice by virtue of the documents in the court file that Chassaniol was contesting every element of the Bank's case . . . Chassaniol filed an answer to the original complaint, filed an objection to the amended complaint, filed a motion to set aside the entry of default, pursued the case in federal court, and filed an answer to the amended complaint while in federal court.

*Id.* at 131-32.

¶33. In *Holmes*, this Court found that the defendant had made an appearance in the action because of the letters exchanged between counsel for the parties demonstrating that the defendant intended to defend the action. *Holmes*, 628 So. 2d at 1364. Accordingly, this Court reversed the trial court's order denying the defendant's motion to set aside the judgment of divorce because the defendant had appeared through her lawyer's correspondence with opposing counsel and the plaintiff failed to provide notice pursuant to Rule 55(b). *Holmes*, 628 So. 2d at 1362, 1365.

¶34. In *King v. Sigrest*, the defendant failed to file a timely answer and the plaintiff subsequently obtained an entry of default. *King v. Sigrest*, 641 So. 2d 1158, 1160 (Miss. 1994). However, after the entry of default, the defendant served the plaintiff with a motion to set aside default, although the defendant failed to file this motion with the court. *Id.* The plaintiff then obtained a default judgment without providing notice to the defendant. *Id.* at 1160. This Court held that the trial court erred in denying the defendant's motion to vacate the default judgment because the defendant had appeared in the action by serving the plaintiff

21

with her motion to set aside default and the plaintiff failed to provide notice pursuant to Rule 55(b). *Id.* at 1162.

¶35. Returning to the present case, American States claims that "[i]t is undisputed that during that conversation [between Anderson and Rogillio's counsel on March 15, 2007], Anderson clearly advised Rogillio's attorney that after Rogillio had served American States, American States would enter an appearance, defend this matter, and contest coverage." However, the contents of the discussion between Anderson and Rogillio's counsel on March 15, 2007 are disputed. Rogillio concedes that his counsel spoke with Anderson on March 15, 2007, but maintains that his counsel advised Anderson that the complaint had been filed and that Anderson "advised that he had received a filed copy of the Complaint and knew of the lawsuit." Rogillio does not concede that Anderson "clearly advised Rogillio's attorney that after Rogillio had served American States, American States would enter an appearance, defend this matter, and contest coverage."

¶36. Based on this Court's prior caselaw, we find that American States did not enter an appearance in the action when its claims specialist spoke over the telephone with Rogillio's attorney. Although an appearance need not be a formal entry of appearance or a physical presence in court, in the illustrative cases summarized above, the defendants either 1) served or sent a document to the plaintiff indicating in writing the defendant's intent to defend, 2) filed a document with the court indicating in writing the defendant's intent to defend, or 3) had counsel communicate to opposing counsel the defendant's intent to defend. Here, there is no evidence of American States informing Rogillio or the court in writing or through counsel of its intent to defend the suit. Although it argues that its claims specialist,

22

Anderson, advised Rogillio of its intent to defend on March 15, 2007, there is no written or audio record of this phone conversation and there is no followup confirmation letter to indicate what transpired during that conversation. American States has not shown that it made an appearance in this action such that Rogillio was required to provide at least three days' notice to American States of its application for default judgment. Accordingly, this Court concludes that the default judgment is not void for failure to comply with Rule 55(b).

## CONCLUSION

¶37.    This Court finds that the trial court properly denied the motion to set aside the default judgment. Therefore, the trial court's order denying the motion to set aside default judgment is affirmed, and this case is remanded for further proceedings on the issue of damages.

¶38.    **AFFIRMED AND REMANDED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. DICKINSON, J., CONCURS IN PART AND RESULT. KITCHENS, J., NOT PARTICIPATING.**