# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-00815-SCT

*SAM WOODRUFF*

*v.*

*RITA THAMES AND LARRY COLLINS*

DATE OF JUDGMENT:                04/15/2013
TRIAL JUDGE:                   HON. JOHN S. GRANT, III
COURT FROM WHICH APPEALED:   RANKIN COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:     ANITA M. STAMPS
                                LARRY STAMPS
ATTORNEYS FOR APPELLEE:      BRENTON MATTHEW CARTER
                                DAVID RINGER
NATURE OF THE CASE:          CIVIL - CONTRACT
DISPOSITION:                   REVERSED AND REMANDED - 07/31/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1. In this real-estate contract case, the trial court entered a default judgment awarding specific performance in favor of the purchaser. The seller moved to have the default judgment set aside, and the trial court denied the motion, finding that the seller lacked good cause for the default and lacked a "compelling defense." A serious question exists regarding whether a valid contract exists, giving the seller a colorable defense. Because the trial court abused its discretion by failing to set aside the default judgment, this Court reverses the trial court's judgment and remands the case for proceedings on the merits.

## FACTS AND PROCEDURAL HISTORY[1]

¶2.     Sam Woodruff, a man in his eighties, owned land in Rankin County. He agreed to sell some part of that land to Rita Thames, his first cousin's daughter, who was also a neighbor. Woodruff claims that he agreed to sell Thames one acre from a tract of land for the purchase price of $9,750. Thames claims that Woodruff agreed to sell her 6.53 acres from a different tract of land for $9,750. Woodruff claims that Thames then brought him a blank contract of sale to sign, which he did. Thames appears to claim that the blank contract of sale included attachments that described the subject land; however, the appellate record contains no evidence of this. The record contains only base assertions by her attorney regarding whether the attachments were part of the contract when signed. Woodruff, however, claims that the attachments were *not* present at the time he signed the contract. Furthermore, Thames alleges

[1]The evidence in the appellate record is sparse, and many of the "facts" alleged are but base assertions made by the attorneys for the parties. Documents that are mentioned in the record (and some of which were before the trial court) and that would be helpful to this Court, but that are not in the appellate record, include: (1) the Woodruff deposition; (2) the Thames deposition; (3) the Smith affidavit; (4) the requests for admission; (5) the alleged contract with subsequent purchasers; (6) the appraisal of the property at issue; (7) the voided check; and (8) an original or color copy of the contract. Interestingly, Thames and Collins filed a motion to supplement the record with the Smith affidavit and the requests for admission. This Court dismissed that motion *without prejudice* because Thames and Collins had failed to provide a certified copy of the documents as is required by Mississippi Rule of Appellate Procedure 10(e). Then, Woodruff filed a motion to supplement the record with the Woodruff deposition, the Thames deposition, and the Smith affidavit. This Court also dismissed that motion *without prejudice* for failure to submit certified copies of the documents as required under Mississippi Rule of Appellate Procedure 10(e). Neither party bothered to refile its motion with certified copies of the documents with which they wished to supplement the record. Mississippi Rule of Appellate Procedure10 makes clear that *both* parties have a duty to ensure that the record before this Court is complete. While the parties both did a very poor job of ensuring that the appellate record contained all relevant information, the ultimate determination on whether the default judgment should be set aside may be made by relying exclusively on an examination of the four corners of the contract for sale.

that Larry Collins, her then-boyfriend, and Kimberly Richardson, a notary public, were present for the signing of the contract. Woodruff claims that neither Collins nor Richardson was present for the signing of the contract. According to Woodruff, Thames then gave him $4,000 earnest money and began pointing to the "wrong land." He "then realized that [they] were not talking about the same piece of real property and immediately wrote 'void' on the check, and returned it to her." Thames admits that he wrote void on the check and that he refused the earnest money. Thames argued at the hearing that Woodruff rejected the payment immediately after he signed the contract because he suddenly had another contract for a higher purchase price on the land.

¶3.    On December 13, 2010, Thames and Collins filed a complaint for specific performance. With the complaint, Thames served requests for admission and other discovery. Thames attached the Contract for Sale and Purchase of Real Estate to the complaint, along with the alleged attachments to the contract. The contract states that the seller and purchaser agree to sell and purchase "the hereinafter described property on the terms and conditions stipulated in the following schedules and both Seller and Purchaser acknowledge that this is the procuring cause of this sale." The next section is entitled "Description/Property Address." The description is completely blank. It describes utterly nothing, and does *not* reference any exhibits. The Seller is listed as Sam Woodruff, and the purchasers as Rita Thames and Larry Collins. In the photocopy, Collins's name appears to be written in different ink than are Woodruff's and Thames's, but neither the original contract nor a color copy is in the appellate record, nor do they appear to have been before the trial court.

3

¶4.    The contract then lists the price.[2]  It further contains a title and conveyance provision that states that the "*Seller* is to furnish Purchaser with Certificate of Title prepared by David attorney [sic], upon whose certificate of title will be obtained title insurance . . ."[3]  (Emphasis added.)    That provision also contained a statement that "Title shall be good and merchantable, subject only to the following items recorded in the Chancery Clerk's office of ____ County[]."  Notably, the county was left blank.  Likewise, the closing date was left blank.  The contract also provides for who is to pay for multiple costs, such as an appraisal and a survey.  For every cost, the letters "N/A" were written.  However, on the lines for "Attorney's fee: (including Certificate of Title and Transfer of Instrument)" and "Other Closing Costs," "N/A" is scratched out and replaced with "P" to indicate that Thames is responsible for those costs.  The letter "P" appears from the black-and-white photocopy to be written in different ink than are the letters "N/A."  No one initialed next to the scratched-out portions.  Confusingly, the purchaser is to pay for the certificate of title when the contract specifically provided elsewhere that the *seller* was to provide the purchaser with the certificate of title prepared by "David attorney," which apparently referred to David Ringer, the *purchaser's* attorney.

¶5.    The contract contains a provision stating that "[t]his instrument is to contain all terms of this sale, and *no representations have been made other than are herein contained*."  (Emphasis added.)    It also states that "[b]oth parties agree that this contract, unless

_____

[2]Woodruff claims that the 6.53 acres is actually worth approximately $64,000, because $9,000-plus is the worth-per-acre of his land.

[3]David Ringer is the attorney for Thames and Collins.

4

subsequently amended in writing, contains the final and entire agreement between the parties hereto, and *neither party shall be bound by any terms, conditions, oral statements, warranties, or representations not herein contained*." (Emphasis added.) Again, the four corners of the contract make no mention of any attachments or amendments to the contract. The contract is dated November 5, 2010, and is signed by Woodruff, Thames, Collins, and a notary public.

¶6.    Also attached to the complaint is a survey of the land Thames claims was the subject of the contract, and that Thames claims was attached to the contract when it was signed.[4] None of the parties initialed or signed the survey to indicate their acceptance of it, nor is it dated.    Thames also attached a written legal description of the land, also undated and unsigned, to the complaint.  Thames claims that this description was also attached to the contract when it was signed. Additionally, Thames attached to the complaint a "First Preliminary Certificate of Title" prepared for Thames by her attorney, David Ringer, and signed by him on November 8, 2010, at 8:00 a.m.  The certificate of title referenced the land's written legal description, which was attached thereto.

¶7.    Woodruff was served with the complaint and discovery, including the requests for admission, on January 7, 2011.  Woodruff was thus required to file an answer to the complaint within thirty days, and an answer to the discovery within forty-five days. M.R.C.P. 12(a), 36(a). The forty-fifth day after service was February 21, 2011. On February 25, 2011, Thames and Collins filed a Motion for Default Judgment, as well as an application

_____

[4]Woodruff suggests that this document was likely the product of a survey conducted when they filed the lawsuit.

5

for entry of default and supporting affidavit. That same day, the chancery clerk of Rankin County issued an entry of default against Woodruff. On March 3, 2011, just ten days after Woodruff's forty-five days to file an answer to discovery ended, the Chancery Court of Rankin County entered a default judgment against Woodruff. The default judgment granted specific performance, ordering the property transferred to Thames and Collins.

¶8. Before the thirty days to file an answer ran, Woodruff took the complaint and all of his paperwork to William Smith, an attorney. Woodruff does not specifically assert that he hired Smith, and it does not appear that Woodruff paid Smith or signed an engagement contract, although he maintains that he thought Smith was representing him. However, Woodruff states in his affidavit that he "dismissed" Smith once he learned about the default judgment. Thames maintained that, according to Smith, there was no engagement of services. Woodruff learned of the default judgment in March 2011, and at some point thereafter, retained his current counsel. On May 16, 2011, and May 19, 2011, Woodruff's current counsel sent urgent letters to Smith regarding why Smith failed to answer the original complaint.

¶9. On June 20, 2011, Woodruff filed a Motion to Set Aside Judgment, Stay Execution of Judgment, For Extension of Time for Appeal and for Other Relief, as well as his Answer and Affirmative Defenses. After a hearing on the same, the trial court denied the motion to set aside the default judgment. In making its ruling, the trial court considered that Woodruff did not timely answer the requests for admission, acknowledging Thames's argument that they should be deemed admitted and stating that "in the event that a trial was held, that would be a matter that would have to be considered by the Court." In its bench ruling, the trial court

6

found that it was "hard, in fact, impossible, to get by the first prong," finding that Woodruff did not have good cause for his failure to answer in a timely manner. The court also found that the argument that Woodruff had a colorable defense because no meeting of the minds occurred was "not compelling." It further found the argument that exhibits may have been added to the contract after the fact "unsubstantiated" because there was only "lip service to the fact that this was done," noting that "[t]here has been no showing whatsoever that either Rita Thames or Larry Collins was in any mode to orchestrate misconduct, misrepresentation, or fraud, which fraud, of course, has to be proven by clear and convincing evidence[.]" The final judgment provided that Woodruff had "failed to show good cause for having failed to answer the Complaint in a timely fashion," and that Woodruff had "failed to show a compelling defense or other reason why should be set aside the Judgment [sic]." It then noted regarding prejudice "that the failure to satisfy the first two burdens prevent [sic] [the Court] from further consideration on the third element."

¶10. Aggrieved, Woodruff appeals, arguing that the trial court should have set aside the default judgment because: 1) Woodruff had good cause for default; 2) Woodruff was entitled to notice of the entry of default; 3) Woodruff has colorable defenses, including that there was no acceptance, unjust enrichment, and the contract was voidable for lack of description; 4) Thames and Collins will suffer no harmful prejudice if the default judgment is set aside; and 5) Woodruff is entitled to have the default judgment set aside under Rule 60 because he was

7

defrauded. He also argues, in the alternative, that the sale should be rescinded because it is unconscionable, as there was a unilateral mistake.[5]

## ANALYSIS

### *Standard of Review*

¶11. This Court reviews the trial court's decision on a motion to set aside a default judgment under an abuse of discretion standard. *Am. States Ins. Co. v. Rogillio*, 10 So. 3d 463, 467 (Miss. 2009). Default judgments are not favored in the law. *Id.* If reasonable doubt exists as to whether a default judgment should be vacated, "the doubt should be resolved in favor of opening the judgment and hearing the case on its merits." *Id.* (quoting *McCain v. Dauzat*, 791 So. 2d 839, 843 (Miss. 2001)). However, the party seeking relief from the default judgment is not entitled to relief as a matter of right, and this Court will only reverse the trial court where it has abused its discretion. *Rogillio*, 10 So. 3d at 467.

### *Default Judgment*

¶12. The clerk of court may enter a default against "a party against whom a judgment for affirmative relief is sought" when that party "has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise." M.R.C.P. 55(a). Further, "[i]f the party against whom judgment by default is sought has appeared in the action, he . . . shall be served with written notice of the application for judgment at least three days prior to the hearing of such application." M.R.C.P. 55(b).[6]

---

[5]Because this Court's decision results in setting aside the default judgment, we need not address the argument that the contract is unconscionable.

[6]Woodruff claims that he should have been given three days' notice of a hearing on the application for default judgment. This argument is without merit. Three days' notice of

8

¶13. A court may set aside the entry of default for good cause shown "and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." M.R.C.P. 55(c). Rule 60(b) provides that a court may relieve a party from a final judgment for the following reasons:

> (1) fraud, misrepresentation, or other misconduct of an adverse party;
>
> (2) accident or mistake;
>
> (3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
>
> (6) any other reason justifying relief from the judgment.

M.R.C.P. 60(b). "This Court has noted that '[a]scertaining the meaning of the provisions of Rule 55(c) and Rule 60(b)(5) and (6) with any degree of precision simply may not be done for the language is hopelessly open textured.'" *Rogillio*, 10 So. 3d at 467 (quoting *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 388 (Miss. 1987)) (alteration in original). Thus, considering the interplay of those rules essentially results in a balancing of the equities. *Rogillio*, 10 So. 3d at 467 (quoting *Pittman*, 501 So. 2d at 388).

¶14. In determining whether to set aside a default judgment, the trial court must consider a three-part balancing test. *Rogillio*, 10 So. 3d at 467-68. The trial court, and thus this

---

a default hearing is only required when a party has appeared in the action. Woodruff did not appear in the action prior to the entry of the judgment of default.

9

Court, must examine: 1) whether the defendant has good cause for the default; 2) whether the defendant has a colorable defense to the merits of the claim against him; and 3) the prejudice, if any, that the plaintiff may suffer if the court sets aside the default judgment. *Id.* at 468 (quoting ***H&W Transfer & Cartage Serv., Inc. v. Griffin***, 511 So. 2d 895, 898 (Miss. 1987)).

*a. Good Cause for Default*

¶15. Woodruff alleges that he was diligent by timely taking his paperwork to Smith to review. He urges that he was under the impression that he had hired Smith and did not realize that no response had been filed on his behalf. Woodruff also notes that both men were in their eighties, presumably arguing that this supports good cause for any confusion.

¶16. This Court has held that similar circumstances did not constitute good cause. In ***Griffin***, the defendant company prudently forwarded a complaint against it to its insurance company, which diligently mailed the paperwork to an attorney. ***Griffin***, 511 So. 2d at 896-97, 899. Unfortunately, the insurance company's address for the attorney was incorrect, and the attorney did not receive the paperwork, or even learn of the matter, until after the default was entered. *Id.* at 897. The defendant imprudently did not follow up with the insurance company after it mailed it the complaint, and the insurance company did not follow up with the attorney after it mailed him the paperwork. *Id.* at 899. The Court found that these facts were "less than powerful in their influence either way." *Id.* It summarized that, "though the initial steps of both [the defendant and its insurance provider] were reasonable and prudent, each thereafter dropped the ball." *Id.* It concluded that the defendant's situation did not amount to good cause for the default. *Id.* Similarly, it appears that Woodruff was initially

10

prudent in taking his documents to an attorney. However, it appears that Woodruff never received a retainer agreement or paid Smith, and yet never followed up in this matter. Woodruff's assertion that the confusion was reasonable, given that both Woodruff and Smith were in their eighties, is not unthinkable; but, given that no mental deficiencies on the part of either man are alleged, it remains that Woodruff should have followed up with Smith. As in the **Griffin** case, the facts are not powerfully influential either way, thus the trial court did not abuse its discretion by holding this factor against Woodruff.

*b. Colorable Defense*

¶17.    Woodruff claims that the trial court erred in finding that he did not have a colorable defense. The trial court found that no "compelling" defense existed and that Woodruff had only paid "lip service" to his accusations that the exhibits to the contract were added after the fact. Woodruff claims that there is not a valid contract because there was neither acceptance nor a meeting of the minds, that the contract is voidable because it lacks a description of the property, and that Thames and Collins were unjustly enriched because no consideration was given. Woodruff also argues that the forced sale should be rescinded as unconscionable because there was unilateral mistake and no meeting of the minds.

¶18.    A defendant does not have to prove a defense for it be "colorable." "Colorable" is defined as "*appearing* to be true, valid, or right." *Black's Law Dictionary* 282 (8th ed. 2004) (emphasis added). A "colorable claim" is defined as "[a] claim that is legitimate and that may *reasonably* be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)." *Black's Law Dictionary* 264 (8th ed. 2004) (emphasis added). Thus, a defense does not have to be proven to trial standards,

11

nor must it be "compelling," as was improperly required by the trial court in this case, to be "colorable"; it merely needs to be "reasonable." Indeed, this Court has held that even a defense of "questionable" strength may be colorable. *Rogillio*, 10 So. 3d at 471 ("This Court is persuaded by Rogillio's argument regarding the ambiguity in the insurance policy and finds that the strength of American States' defense is questionable. Nevertheless, we are of the opinion that American States' defense does present a colorable defense to the merits of the [sic] Rogillio's claim for the purpose of the balancing test. Therefore, the second prong of the balancing test weighs in favor of American States."). Further, the prong of whether the defendant has a colorable defense on the merits outweighs the other factors of the balancing test in its importance. *Id.* at 469.

¶19. "The elements of a valid contract are: (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, (6) no legal prohibition precluding contract formation." *Rottenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003). "A contract is unenforceable if the material terms are not sufficiently definite." *Id.* The description of the land in a contract for the sale of real property is unquestionably an essential term that must be stated with specificity. *See* Miss. Code Ann. § 15-3-1(c) (Rev. 2012) (contract for the sale of lands must be in writing); *Theobold v. Nosser*, 752 So. 2d 1036, 1040 (Miss. 1999) (contracts for the sale of land must describe the land "with reasonable certainty"); *Nickerson v. Fithian Land Co.*, 118 Miss. 722 (1918) (an agreement to convey land "cannot be enforced in any case unless the writing identifies with certainty the property sought to be conveyed"); *see also*

12

*Rottenberry*, 864 So. 2d at 270 ("Price is an essential term that must be stated with specificity. The contract fails when the price has not been stated with specificity.").

¶20. When interpreting a contract, a court must first examine the four corners of that contract. *Rottenberry*, 864 So. 2d at 270. If a contract's language is clear and unambiguous, then it must be effectuated. *Id.* Further, if vagueness or ambiguity exist, the terms must be "strongly construed" against the drafting party. *Id.* "Only when the intent of the parties is not clear" after examining the language and construing the language most favorably to the nondrafting party should the Court resort to examining extrinsic evidence. *Id.*; *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005). "It is only when the review of a contract reaches this point that prior negotiation, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract." *Facilities, Inc.*, 908 So. 2d at 111. This Court has found that "silence alone does not necessarily create an ambiguity as a matter of law." *Id.* at 115; *see also Williston on Contracts* 4th § 30:4 (2012) ("[A]mbiguity does not necessarily exist simply because a contract requires interpretation or fails to define a term, and the failure to include more express language of the parties' intent does not create an ambiguity in the contract when only one reasonable interpretation exists. The contract's silence on a particular issue does not, by itself, create an ambiguity as a matter of law . . . ."); 17A Am. Jur. 2d *Contracts* § 331 (2004) ("Ambiguity in a written agreement does not arise from silence, but from what was written so blindly and imperfectly that its meaning is doubtful."). Additionally,

> For an incorporation by reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms. A reference to another document must be clear and unequivocal, and

13

the terms of the incorporated document must be known or easily available to the parties. A document is considered incorporated by reference where the incorporating document specifically provides that it is subject to the incorporated one. However, a mere reference to another document is not sufficient to incorporate that other document into a contract; the writing to which reference is made must be described in such terms that its identity may be ascertained beyond reasonable doubt.

17A C.J.S. *Contracts* § 402 (2011).

¶21. Moreover, if a contract is valid, it must be determined if specific performance is an appropriate remedy. This Court has stated that "[f]or specific performance to be granted, a contract must be reasonably complete and reasonably definite on material terms." ***White v. Cooke***, 4 So. 3d 330, 334 (Miss. 2009). A contract enjoys this level of specificity when it contains "matter which will enable the court under proper rules of construction to ascertain its terms, including consideration of the general circumstances and if necessary relevant extrinsic evidence." ***Id.*** (internal quotations omitted). "If the contract does not pass this test of specificity, it should be rendered unenforceable, and specific performance should be denied." ***Id.*** Where a writing "is too indefinite and uncertain in its terms," specific performance should be refused. ***Nickerson***, 118 Miss. at 722.

¶22. The trial court determined that Woodruff merely paid "lip service" to his potential defenses, rather than putting forth sufficient evidence. This determination was incorrect. In this case, a court need only look at the four corners of the contract itself, a copy of which was before the trial court, to ascertain that Woodruff has several defenses that are not only colorable, but possibly even strong. The four corners of the contract contain absolutely no description of the property to be sold; it does not even include the county in which the subject property is located. Nor does the contract contain any reference to an attached

14

description, rendering the argument that the allegedly attached property descriptions are part of the contract very questionable, as documents incorporated by reference should be described with some specificity in the contract, and this contract described nothing. The contract also contains definitive statements that the entirety of the contract is contained within the four corners of the document. If the attachments are not part of the contract, the lack of written description of the land would render the contract unenforceable under the Statute of Frauds. Further, it appears possible that some of the elements of a valid contract were not met, namely whether the agreement is sufficiently definite and whether mutual assent was present. Thus, "colorable" defenses are apparent from the four corners of the contract.

¶23.    Even if the contract were deemed ambiguous, the first rule of construction after such a finding is that it be strongly construed against the drafting party, in this case, Thames and Collins. Only if it is still ambiguous may the court examine extrinsic evidence. It may well be that at trial, Thames and Collins could prove that the exhibits describing the land were part of the contract,[7] but that does not obliterate Woodruff's colorable defenses. Thus, the trial court abused its discretion in finding that Woodruff's defenses were "not compelling," and this factor strongly favors Woodruff.

*c. Prejudice*

¶24.    Woodruff argues that Thames and Collins would suffer no significant prejudice from having the default judgment overturned. The trial court problematically did not address this

---

[7]Whether the requests for admission are deemed admitted appears to be a matter for trial, not for a hearing on a default judgment.

factor. Thames and Collins argue that it was not error for the chancellor to refrain from considering this prong; but, if it was error, that error was harmless. They argue first that it would be "illogical" for the trial judge to consider this prong, having already determined that the first two prongs weighed in favor of Thames and Collins.[8] In the alternative, Thames and Collins argue that the failure to consider this prong is harmless error, because they would suffer prejudice were the default judgment set aside. They claim that they incurred "expenses in paying the commissioner to review all the documents and to execute the deed" and closing costs, and that they will have incurred these expenses for nothing if they are forced go to trial and then ultimately win on the merits. Thames and Collins cite no caselaw to bolster their position that this "prejudice" is sufficient to uphold a default judgment.

¶25.    In the case of ***King v. Sigrest***, a case about a land dispute, the plaintiff suffered the prejudice of a thirty-day delay in the proceedings. ***King v. Sigrest***, 641 So. 2d 1158, 1163 (Miss. 1994). This Court stated that it was "not impressed" by the prejudice suffered, as the motion to set aside the default was prompt and resulted in little delay.[9]  ***Id.*** at 1163. Furthermore, it noted that "[t]he land is not going away and the contestants had been

---

[8]The argument that it is illogical to consider all the factors in a factor test is without merit. "Factor tests . . . must be considered on the record in every case." ***Lowery v. Lowery***, 25 So. 3d 274, 280 (Miss. 2009). "These factor considerations are not only essential for appellate purposes, but also for trial courts, as they provide a checklist to assist in the accuracy of their rulings." ***Id.***  This Court is one of review, and the trial court should generally give it a complete analysis to review.

[9]The time between the entry of the default judgment and the motion to set aside default was three and one-half months. However, the hearing in this case did not occur until nearly two years later. The record indicates that the hearing was delayed because both sides agreed to engage in some discovery. At any rate, Thames and Collins do not appear to object to this delay, nor did they characterize it as prejudicial.

16

neighbors for years." *Id.* Similarly, the land in this case is not going away. Additionally, while Thames and Collins bemoan their costs paid, they fail to place into the record the amount of those costs. It is difficult to assess prejudice without any idea of what monetary amount Thames and Collins claim prejudices them. Additionally, given the possibility that a valid contract does not exist in this case, it is difficult to comprehend how Thames and Collins would be prejudiced by not receiving that to which they may not be entitled. As in *King*, the alleged prejudice suffered by Thames and Collins appears unimpressive. Although the trial court erroneously failed to make findings on this factor, we find that this prong favors Woodruff.

**CONCLUSION**

¶26.    While the "good cause for delay" factor favors Thames and Collins, the colorable defense and prejudice factors favor Woodruff. The chancellor erroneously required Woodruff to put on a "compelling defense," which is a stricter requirement than "colorable." Moreover, the colorable defense factor is considerably strong in this particular case, and that factor carries more weight than do the other two factors. Default judgments are not favored in the law, and reasonable doubt should be resolved in favor of opening the judgment and allowing the case to proceed on the merits. A balancing of the equities in this case clearly mandates that the default judgment should be set aside. Thus, the trial court abused its discretion by denying the motion to set aside the default judgment. Therefore, the trial court's judgment denying the motion to set aside the default judgment is reversed, and the case is remanded to proceed on the merits.

¶27.    **REVERSED AND REMANDED.**

17

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR.**