# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00601-COA

JULIO GORDON                                                          APPELLANT

v.

CHRISTY DICKERSON                                                     APPELLEE

DATE OF JUDGMENT:            04/23/2020
TRIAL JUDGE:                 HON. PAUL S. FUNDERBURK
COURT FROM WHICH APPEALED:   LEE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      PHILLIP MATTHEW BLANCHARD II
ATTORNEYS FOR APPELLEE:      JORDAN LEIGH BOLING HUGHES
                             DESIREE CAROLE HENSLEY
NATURE OF THE CASE:          CIVIL - REAL PROPERTY
DISPOSITION:                 AFFIRMED - 09/14/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.    A landlord sought to evict his longtime tenant, and a justice court ordered her to vacate and awarded the landlord $914 in damages. The tenant later appealed to county court and filed counterclaims, alleging in part that the deplorable condition of the home violated the implied warranty of habitability. After the landlord did not respond to her counterclaims, the trial court eventually awarded her a total of $50,000 in compensatory and punitive damages. The county court denied the landlord's request to set aside the default judgment, and he appealed to circuit court, which affirmed the judgment.

¶2.    Finding that the counterclaims were not procedurally barred and that the default judgment was not improper, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     In May 2016, a representative from the city of Tupelo, Mississippi, sent Julio Gordon a letter.  The letter explained to him that a house he owned and rented out at 514 Lake Street was "IN A SERIOUS STATE OF DEMISE."  The code enforcement officer informed him there were "HOLES IN WALLS[,] CEILINGS [AND] FLOORS."  There was "ROTTED WOOD INSIDE AND OUTSIDE."  The letter continued: "FLOOR SYSTEM IS FAILING.  PLUMBING SYSTEM IS FAILING.  MOLD PRESENT IN LAUNDRY ROOM AND BATHROOM."  But this house, which the city concluded was not up to the rental code standard, was not vacant.  Gordon had been renting it to a woman named Christy Dickerson for over a decade.

¶4.     Gordon and Dickerson had a rent-to-own agreement, where Dickerson would pay the $36,000 purchase price in monthly installments of $300, plus $100 a month toward home insurance, and "after ten years [Dickerson] would get a deed from [Gordon]."[1]  Under the agreement, Gordon was responsible for repairs to the house during the contract period.

¶5.     The two successfully carried out the terms of the contract for about seven years.  But in 2013, the condition of the house declined drastically.  Just a few years before Dickerson was set to take ownership, the single-family home was in desperate need of repairs to the roof, kitchen, living room, bathroom, and laundry room.  The plumbing, flooring, and electrical system all needed maintenance as well.  Dickerson notified her landlord of the

---

[1] Dickerson since misplaced her copy of the rent-to-own contract.  However, this is irrelevant to the case at bar, as she does not claim ownership to the property.  For purposes of this lawsuit, Gordon and Dickerson have a landlord-tenant relationship.

problems "on a regular basis."[2]

¶6.     By the winter of that year, Dickerson was unable to use her kitchen. The floors were rotten and so unstable that she had to use two-by-fours to support the stove so that it "would not fall through the floor." The oven did not work, so she resorted to "cooking most meals on the grill outside." The only toilet in the house was "not functioning," and the bathroom pipes burst. Dickerson asked Gordon to repair them, but she eventually had to fix them herself. The roof in the laundry room leaked for years, and the room filled with mold that spread to other areas of the home. The floor in that room "rotted entirely." According to Dickerson, the only usable rooms in the house were two bedrooms. The rest of the house—including the kitchen, bathroom, laundry room, and living room—was uninhabitable.

¶7.     The tenant repeatedly asked Gordon to repair the damage, but he refused. Believing the property would one day be hers, Dickerson attempted some of the repairs herself.

¶8.     In the fall of 2015, the house failed inspection by the city. The inspection report detailed the egregious conditions and included photographs depicting the "[r]otted wood and siding falling off," "[l]aundry room molded," and "pipe[s] not connected." Raw sewage leaked out from the kitchen. There were holes in the laundry room ceiling. One photograph shows the pliers Dickerson had to use to turn the bathtub on and off. Based on this report, the city rejected Gordon's application for a Certificate of Occupancy and demanded he make the necessary repairs.

---

[2] These facts are based on the counterclaims asserted by Dickerson. As will be discussed further below, the counterclaims are accepted as true because Gordon failed to respond, and a default judgment was entered.

3

¶9. Dickerson continued making payments until the conclusion of the rent-to-own contract in January 2016. Ten years—and more than a hundred payments—after entering into the agreement, Dickerson asked Gordon to transfer title to her. He refused and subsequently filed suit to evict her. Finding her in arrears on her rent, the justice court awarded Gordon a judgment of $914 and ordered Dickerson to vacate the premises.

¶10. Dickerson appealed the judgment to the county court and provided notice to Gordon under Uniform Rule of Circuit and County Court Practice 5.04.[3] Over a year later, the clerk of the county court sent Dickerson a notice of intent to dismiss the case as stale. *See* MRCP 41. Dickerson responded shortly thereafter by filing an "Appellant's Counterclaims for Breach of Contract, Fraudulent Misrepresentation, Trespass and Wrongful Possession, Unjust Enrichment, and in the Alternative for Breach of the Implied Warranty of Habitability, Breach of the Implied Covenant of Quiet Enjoyment, and Constructive Eviction." The certificate of service attached to Dickerson's counterclaims indicated that a copy was sent to Gordon at his mailing address. The county court then entered an order reinstating the case on the active docket.[4]

¶11. Seven months passed with no response from Gordon as to the counterclaims. Dickerson then filed an application with the county clerk for an entry of default, citing

---

[3] Rule 5.04 provides that a party wishing to appeal a judgment "from a lower court" must provide written notice of the appeal "to all parties." The written notice must be accompanied by a certificate of service.

[4] Dickerson was represented in county court and subsequent proceedings by Jordan Hughes, Desiree Hensley, and law student Cassandra Crosby with the University of Mississippi School of Law's low-income housing clinical program.

4

Gordon's failure to respond. A certificate of service of the application for the entry of default was mailed to Gordon, and several days later the clerk entered a notice of default judgment. A couple of months passed, and Dickerson filed a "Motion for Default Judgment" and a "Notice Setting Hearing Date for Appellant's Motion for Default Judgment." Still, Gordon did not respond to the pleadings. A hearing was held with Gordon appearing pro se. The court noted that since the default judgment had already been entered against Gordon, the only issue to be considered at the hearing was "what amount, if any amount, of damages to award Ms. Dickerson."

¶12. The county court found that although Gordon had been "properly served with the Notice of Appeal from Justice Court, Mrs. Dickerson's counterclaims, the Application for Entry of Default, the Notice of Entry of Default, the Motion for Default Judgment, and the Notice Setting Hearing Date for March 20, 2019," he had not shown good cause for his failure to respond to the aforementioned pleadings. With regard to damages, the county court noted that Dickerson had requested that Gordon make "repairs to her kitchen and bathroom, appliances, fixtures, and plumbing, floors throughout the home, roof, and the ceiling in the laundry room" during her tenancy, but Gordon had refused to do so, resulting "in the City of Tupelo's condemnation of the property in 2016 and Ms. Dickerson's subsequent constructive eviction therefrom."[5] Because Dickerson had continued to pay full rent "when the property's condition violated the implied warranty of habitability," the county court determined that she was entitled to a rent offset of $10,800. The court further awarded Dickerson punitive

---

[5] Gordon acknowledged at the hearing that the "[t]he city condemned the house."

5

damages of $39,200 based on Gordon's "malicious and grossly negligent conduct."

¶13. Following the damages hearing, Gordon filed a "Motion to Set Aside Default Judgment or in the Alternative to Reconsider, Alter or Amend Judgment or for a New Trial and for Dismissal and Stay of Judgment Pending Post-Trial Motions[.]" Dickerson responded with a "Motion to be Excused from or to Cancel Hearing and Opposition to Appellee's Motion to Set Aside Default, to Alter of Amend, for a New Trial, for Dismissal, and for Stay." The county court entered an order to stay execution of judgment until a hearing could be held.

¶14. Gordon later filed an amended motion to set aside the default judgment, claiming:

(1) "he had not only an arguable defense to the counter complaint filed by [Dickerson] but also a legitimate claim for damages against her as well";

(2) he was never personally served with a summons, depriving him of notice that he was required "to file a responsive pleading or that a judgment by default would be rendered against him" if he failed to do so;

(3) neither he nor the county court granted Dickerson consent or leave to amend her responsive pleading;

(4) the county court lacked jurisdiction because Dickerson failed to perfect her appeal under Mississippi Code Annotated section 11-51-85; and

(5) Dickerson "should not have been allowed to proceed on her compulsory counterclaims because they were filed past the deadline mandated by Mississippi Rule of Civil Procedure 13(k)."

A hearing on Gordon's motion was held, and the county court entered an order denying Gordon's motion and lifting the stay on the execution of the judgment. The circuit court affirmed the county court's judgment.

¶15. Gordon appealed, and the case was assigned to us for review.

6

**DISCUSSION**

¶16.    Gordon raises three arguments on appeal:  the counterclaims that formed the basis of the default were untimely; the county court should have granted his motion to set aside the default judgment; and the award of punitive damages should be reversed.

    **I.**       **The trial court had discretion to allow the counterclaims.**

¶17.    On appeal, Gordon argues that Dickerson's counterclaims were untimely under the Mississippi Rules of Civil Procedure.  He points to the plain text of the Rule to argue that the counterclaims were beyond the time to file, but he fails to cite any case in support of his interpretation.

¶18.     Mississippi Rule of Civil Procedure 13(k) governs actions appealed from justice court to county court or circuit court.  In relevant part, the Rule states that "any counter-claim made compulsory by subdivision (a) of this rule shall be stated as an amendment to the pleading *within thirty days after such appeal has been perfected or within such further time as the court may allow*; and other counter-claims and cross-claims shall be permitted as in an original jurisdiction action." MRCP 13(k) (emphasis added).  In line with this expansive language, "[t]he purpose of a counterclaim pursuant to M.R.C.P. 13 is to grant the court broad discretion to allow claims to be joined for the resolution of all controversies between the parties in one suit and to eliminate the inordinate expense occasioned by multiple litigation." *Hearn v. Autumn Woods Off. Park Prop. Owners Ass'n*, 757 So. 2d 155, 163 (¶42) (Miss. 1999); *see also* MRCP 13, advisory committee notes (Rule 13's purpose "is to grant the court broad discretion to allow claims to be joined in order to expedite the

7

resolution of all the controversies between the parties in one suit and to eliminate the inordinate expense occasioned by circuity of action and multiple litigation.").

¶19. We review the county court's allowance of the counterclaims given this "broad discretion" set forth in Rule 13. In a hearing, the county court told the parties, "Now, as we sit here today, we all know that the [c]ourt permitted additional time." The county court also noted that Gordon had ample time to file a motion to strike Dickerson's filing of the counterclaims, but he had failed to do so. As a result, there was nothing to indicate to the court that Gordon "didn't consent to the countercomplaint being tried."

¶20. In its review of that decision, the circuit court concluded that Gordon's interpretation of Rule 13 had no basis in law:

> Gordon reads into [Rule 13(k)] a provision that does not exist. The rule instead provides that counter-claims may be filed "within such further time *as the court may allow.*" M.R.C.P. 13(k) (emphasis added). There is no requirement under this provision that the party seek leave of court or obtain a court order before filing counter-claims outside the thirty-day window. *Compare* M.R.C.P. 13(k) *with* M.R.C.P. 13(f) ("When a pleader fails to set up a counter-claim through oversight, inadvertence, or excusable neglect, or when justice requires, he may *by leave of court* set up the counter-claim by amendment on such terms as the court deems just.") (emphasis added). If the Mississippi Supreme Court, in promulgating the Mississippi Rules of Civil Procedure, intended to require leave of court to pursue counter-claims in appeals from justice court outside Rule 13(k)'s thirty-day window, it would have so provided, as it did for non-justice court appeals in Rule 13(f). Instead, it allows them to be filed "within such further time as the court may allow."

The circuit court further noted that "Dickerson's counterclaims *were* properly brought before the county court as a pleading *subsequent to* the complaint." *See* URCCC 5.07.

¶21. In light of the expansive language of Rule 13, and the county court and circuit court's thorough review of the matters, we find there was no abuse of discretion in allowing

8

Dickerson's counterclaims. While they were not filed within the thirty-day window, Rule 13(k) also allows a trial court discretion to allow counterclaims as it sees fit "for the resolution of all controversies between the parties in one suit and to eliminate the inordinate expense occasioned by multiple litigation." *Hearn*, 757 So. 2d at 163 (¶42).

¶22.    In fact, there is evidence in the record that it would actually have gone against the purpose of Rule 13 to strike the counterclaims, a position endorsed by the separate opinions. The Supreme Court has ruled that "to dismiss a counterclaim is tantamount to the dismissal of any other action." *Id*. at 163 (¶43). Dickerson's counterclaims were wholly related to the eviction action, including breach of the implied warranty of habitability, trespass, and unjust enrichment. The "broad discretion" invested in the trial courts in how they see fit to allow counterclaims then serves "to prevent the waste of scarce judicial resources and to foster the efficient and comprehensive disposition of cases," which serves judicial economy and conserves the resources of the parties. *Triplett v. S. Hens Inc*., 238 So. 3d 1128, 1131 (¶12) (Miss. 2018) (citation and internal quotation mark omitted) (analyzing judicial economy as applied to splitting of claims by plaintiffs). Accordingly, it was within the trial court's discretion to allow Dickerson to counterclaim against the landlord in the same action, and dismissal would have disregarded Rule 13's stated purpose "to eliminate the inordinate expense occasioned by circuity of action and multiple litigation."[6] MRCP 13, advisory committee notes.

---

[6] Indeed, Rule 13 is so expansive that it not only permits trial courts the discretion to allow compulsory counterclaims "within such further time as the court may allow[,]" but Rule 13 even permits trial courts to allow unrelated "counterclaims and cross-claims" as if they were filed "in an original jurisdiction action." MRCP 13(k).

¶23. As correctly pointed out in the separate opinion by Judge Emfinger, appeals to county court from justice court do not have complaints and answers. *See* URCCC 5.07 ("The appeal will proceed as if a complaint and answer had been filed."). However, his separate opinion then insists that "Dickerson's counterclaims should have been asserted in an amended answer." Respectfully, since appeals to county and circuit court do not have answers pursuant to Rule 5.07, the conclusion of this separate opinion must be rejected.

¶24. Furthermore, Dickerson was not required to seek leave of court before filing her counterclaims. Judge Emfinger's separate opinion would also require that a litigant seek leave of court before filing a counterclaim, as under Mississippi Rule of Civil Procedure 15. Yet this is not a case where Rule 15 applies, but one where a subsection of a different rule directly addresses the case at hand. *See* MRCP 13(k). There is no need to graft the analysis of a different rule onto the situation before us when the rules as written already provide the answer. As pointed out by the circuit court in affirming the county court's decision, there is simply no rule that requires leave of court when appealing from justice court to county court or circuit court, in contrast to Rule 15's focus on amending existing pleadings. *See* MRCP 15. As the trial court phrased it, "Gordon reads into [Rule 13(k)] a provision that does not exist." Furthermore, the trial court took these very same arguments into account, rejected them, and expressly allowed the tenant to proceed.

¶25. Our Supreme Court has long held that "[t]rial courts have inherent authority and duty to control their dockets for the orderly disposal of business." *Harris v. Fort Worth Steel & Mach. Co.*, 440 So. 2d 294, 296 (Miss. 1983). Given the careful attention to this issue by

10

both the county court and circuit court, the broad language of Rule 13(k), and this longstanding authority, there was no abuse of discretion in allowing the counterclaims to proceed.

> **II.    The trial court did not abuse its discretion in finding the landlord in default for failure to answer the counterclaims.**

¶26.    Even if the counterclaims were allowed to move forward, Gordon protests that he was improperly held in default for his failure to respond to them.

¶27.    There is no doubt that a failure to respond to a counterclaim can be the basis for a default judgment.  Rule 55, which governs default judgments, explicitly states that "[t]he provisions of this rule apply whether the party entitled to the judgment by default is a plaintiff, a third-party plaintiff, or a party who has pleaded a cross-claim or counter-claim." MRCP 55(d); *see Shannon v. Henson*, 499 So. 2d 758, 763 (Miss. 1986), *superseded on other grounds by statute*, 2012 Miss. Laws ch. 476, §1 (H.B. 993) (noting that "[t]his rule expressly applies to a counterclaimant wishing to take advantage of the default of a plaintiff-counterdefendant").  In other words, if one does not respond to a counterclaim, one can face default.

¶28.    "Direct appeals from justice court and municipal court shall be by trial de novo." URCCC 5.01.  In such cases, "[t]he appeal will proceed as if a complaint and answer had been filed[.]"  URCCC 5.07.  So while counterclaims in cases filed in circuit court might typically be situated in an answer, in an appeal from justice court the counterclaims may be in a standalone filing.  Additionally, in appeals from justice court, "the court may require the filing of any supplemental pleading to clarify the issues."  *Id*.

11

¶29. That is exactly what happened in this case when Dickerson filed her counterclaims once the case was appealed to county court. The trial court expressly considered and approved the counterclaims, finding that "Dickerson's counterclaims *were* properly brought before the county court as a pleading *subsequent to* the complaint." *See id*.

¶30. Because Gordon failed to respond to Dickerson's counterclaims and her motion for a default judgment, the county clerk entered a default against him in January 2019. After a hearing, the county court ordered Gordon to pay Dickerson $10,800 in compensatory damages and $39,200 in punitive damages. The county court subsequently denied Gordon's motion to set aside the judgment, and the circuit court affirmed the county court's ruling.

¶31. In reviewing an appeal of a county court judgment, this Court has held, "The county court was the fact[-]finder, and the circuit court, as well as this Court, are bound by the judgment of the county court if supported by substantial evidence and not manifestly wrong." *Stevens v. Grissom*, 214 So. 3d 298, 300 (¶6) (Miss. Ct. App. 2017). Further, we afford "the judgment of a circuit or county court in a non-jury trial . . . the same deference on appeal as a chancery court decree." *Id*.

¶32. A trial court's "decision to grant or deny a motion to set aside a default judgment" is reviewed "only for an abuse of discretion." *Villavaso v. S.H. Anthony Inc.*, 309 So. 3d 587, 595 (¶25) (Miss. Ct. App. 2020) (citing *Am. States Ins. Co. v. Rogillio*, 10 So. 3d 463, 467 (¶8) (Miss. 2009)). The Mississippi Supreme Court has articulated a "three-prong test" in determining whether to set aside a default judgment. First, "the trial court must consider '(1) the nature and legitimacy of the defendant's reasons for his default, i.e. whether the

defendant has good cause for default[.]'" *BB Buggies Inc. v. Leon*, 150 So. 3d 90, 101 (¶23) (Miss. 2014) (quoting *Rogillio*, 10 So. 3d at 468 (¶10)). The second prong is "whether the defendant in fact has a colorable defense to the merits of the claim[.]" *Id.* The final prong requires the court to consider "the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set aside." *Id*.

¶33. Gordon argues that "in the case at bar, there was precious little in the record addressing any of the three prongs set forth by the Mississippi Supreme Court to guide the judiciary in deciding motions to set aside default judgments." For the reasons set forth below, Gordon's arguments are not supported by the record.

### A.     Nature and Legitimacy of the Reasons for Default

¶34. Regarding the first factor, Gordon asserts that he had "legitimate reasons" for not responding to Dickerson's counterclaims on appeal. Specifically, he notes that Dickerson's counsel "never filed a motion to require additional written pleadings"; nor was there any order issued by the county court. To support his claim, Gordon cites Mississippi Code Annotated section 11-51-91 (Rev. 2019), which provides that "[o]n appeal from a justice of the peace court to the circuit court the case shall be tried anew, in a summary way, without pleadings in writing[.]"

¶35. Dickerson, however, contends that the statute is "superseded by the Mississippi Rules of Civil Procedure" and notes Uniform Rule of Circuit and County Court Practice 5.07's provision that "[t]he appeal will proceed as if a complaint and answer had been filed, but the court may require the filing of any supplemental pleading to clarify the issues." URCCC

5.07. In *Davis v. Nationwide Recovery Service Inc.*, 797 So. 2d 929, 930 (¶4) (Miss. 2001), the supreme court recognized its prior precedent articulating the supreme court's "power to establish rules regarding appeals from court to court, and its mandate that such rules super[s]ede statutes which are in conflict with the rules," including the Uniform Rules of Circuit and County Court Practice.[7]  As the county court held in its findings, Dickerson's notice of appeal "operate[d] as her general denial" of the justice court action and gave the county court jurisdiction over the parties.  Because both the Uniform Rules of Circuit and County Court Practice and the Rules of Civil Procedure control in this instance, *see Davis*, 797 So. 2d at 930 (¶4), the Court finds no error in the county court's findings.

¶36.    In addition, despite Gordon's argument to the contrary, the county court gave great consideration to this factor, noting:

> Again, [Gordon] took no action.  I don't know why he took no action, but he's not really offered any excuses as to why he took no action.  But like I said, it may just go back to him not having an attorney.
>
> But whatever the reason was, he certainly hasn't offered, in this [c]ourt's view, any reasonable excuse why he didn't respond to the request for a default judgment.

These factual findings are binding and do not provide basis for reversal.

¶37.    Gordon alternatively claims that he had another legitimate basis for not filing a written response—he was not served with process under Mississippi Rule of Civil Procedure 4(c). His claim relies on the following language in Rule 5 of the Mississippi Rules of Civil Procedure: "No service need be made on parties in default for failure to appear *except that*

---

[7] In this case, the applicable rules at issue are Rule 4 and Rule 13(k) of the Mississippi Rules of Civil Procedure, as well as Uniform Rule of Circuit and County Court Practice 5.07.

14

*pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided in Rule 4 for service of summons*." (Emphasis added).

¶38. The county court, at the March 2019 hearing, took great pains to assure that Gordon had received notice of default judgment and the hearing. Later, at the subsequent motions hearing, the county judge determined:

> Now, according to the Rules of Civil Procedure, once a court has jurisdiction over the parties, once the parties have appeared in court, service is made on them by either hand-delivery or by mail or by electronic means.
>
> . . . .
>
> The certificate of service indicates everything was properly mailed to him, and that was the address that was indicated on the records that were forwarded up here from justice court. Again, there is no doubt he received everything that was filed.

Gordon does not dispute that when Dickerson filed the notice of appeal, the county court acquired jurisdiction over the appeal from justice court. As stated above, Gordon was mailed notices of the counterclaims and the default judgment, and he appeared at the hearing. Lastly, as the circuit court noted in its findings, at the time Dickerson filed her counterclaims, Gordon was not yet in default for failure to appear; therefore, the language from Rule 5 on which Gordon relies would not be applicable.

### B. Existence of a Colorable Defense to the Merits

¶39. As for the second factor, the Supreme Court explained in *Tucker v. Williams*, 198 So. 3d 299, 312 (¶35) (Miss. 2016):

> "Colorable" is defined as appearing to be true, valid, or right. A colorable defense is one that reasonably may be asserted, given the facts of the case and the current law. A defense need not be compelling, be proven to trial

standards, or be supported by sworn evidence in order to qualify as a "colorable defense." Rather, the defense must be a reasonable one. Indeed, this Court has held that even a defense of questionable strength may be colorable.

Importantly, the county court also thoroughly considered this factor at the hearing on the motion to set aside the judgment, concluding:

> [G]oing back to that three-prong test on setting aside a default judgment, [the court] just does not find that [Gordon] had any reasonable, colorful excuse for not responding to the countercomplaint and not making a proper defense of himself in this case.
>
> . . . .
>
> As far as colorable defenses goes, again as the Court has indicated, the Court has pretty much heard the evidence about his conduct and all of that when we had to consider punitive damages.
>
> And I just don't find that prong of the test is satisfied and gives enough weight for the Court to set aside a default judgment independent of what I've already said about his reasons for not responding.

Regarding this factor, Gordon simply reiterates his arguments that he was entitled to service of process under Rule 4 and that he did not know he was to file a responsive pleading. We have already found these assignments of error to be without merit.

¶40. Furthermore, at the hearing on damages, Gordon was allowed to submit evidence and testimony regarding the condition of the home, particularly his claim that Dickerson caused the "sanitary issues." The court clearly considered these arguments on the merits and found them lacking. Affording the county court the appropriate "deference on appeal," *see Stevens*, 214 So. 3d at 300 (¶6), we find there was no abuse of discretion.

### C. Nature and Extent of Prejudice Plaintiff May Suffer if Default Judgment is Set Aside

16

¶41. The third and final prong requires the court to consider "the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set aside." *BB Buggies Inc.*, 150 So. 3d at 101 (¶23) (quoting *Rogillio*, 10 So. 3d at 468 (¶10)). Gordon contends that Dickerson would not have been prejudiced by the county court's setting aside the default judgment. The court addressed this factor at the hearing, reasoning, "As far as prejudice to the parties goes, I think the rules contemplate more procedural-type prejudice, as far as availability of witnesses and that type of thing, and that doesn't seem to really favor one party or the other in considering setting aside this default judgment." Therefore, the court found the factor favored neither party in this instance.

¶42. The Supreme Court has held "that the fact that 'the injured plaintiff is without a resolution to her claim for that period of time[,] i.e., the period of delay caused by the defendant's default[,]' constitutes prejudice." *Rogillio*, 10 So. 3d at 472 (¶23) (quoting *Guar. Nat. Ins. Co. v. Pittman*, 501 So. 2d 377, 388 (Miss. 1987)). In *Rogillio*, the default judgment was entered "more than four months after service of the complaint," and the trial court "denied American States' motion approximately nine months after that." *Id*. The Supreme Court found "that setting aside the default judgment would certainly have caused prejudice to Rogillio." *Id*. Here, admittedly the delay between the filing of the notice of appeal and the filing of the counterclaims were attributable to Dickerson. However, the entry of the default judgment was not done until seven months after Dickerson filed her counterclaims—seven months with no response by Gordon. None of the delay during that period of time was attributable to Dickerson. The county court denied Gordon's motion to

17

set aside the default judgment nine months later.

¶43. However, as the county court recognized, this case did not involve the availability of witnesses or loss of evidence, which is the typical finding in support of prejudice. *See BB Buggies Inc.*, 150 So. 3d at 104 (¶32) (finding "the common claim in support of a finding of prejudice, that memories fade and evidence may be lost over time, [was] not applicable"). Therefore, the court's determination that this factor favored neither party is supported by the record.

¶44. As two of the three prongs weigh in favor of Dickerson, and the third prong favors neither party, we affirm the court's denial of Gordon's motion to set aside the default judgment.

### III.   The county court did not err in ordering punitive damages.

¶45. The county court found that Gordon's "refusal to make repairs to the property show[ed] actual malice and a wanton and reckless total disregard for the law and for the safety of his tenant, Ms. Dickerson." The county court further assessed punitive damages in the amount of $38,200, "an amount that the [c]ourt has determined will be sufficient to discourage Mr. Gordon from engaging in this willful, wanton, and reckless conduct in the future."

¶46. Mississippi Code Annotated section 11-1-65(1)(a) (Rev. 2014) permits punitive damages where it is shown by clear and convincing evidence that a defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a). The

18

statute further instructs:

> In all cases involving an award of punitive damages, the fact finder, in determining the amount of punitive damages, shall consider, to the extent relevant, the following: the defendant's financial condition and net worth; the nature and reprehensibility of the defendant's wrongdoing, for example, the impact of the defendant's conduct on the plaintiff, or the relationship of the defendant to the plaintiff; the defendant's awareness of the amount of harm being caused and the defendant's motivation in causing such harm; the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct; and any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages. . . .

*Id*. § 11-1-65(1)(e). The decision to award punitive damages is "within the discretion of the trier of fact" and "will not be disturbed absent exceptional circumstances, such as where the amount is arbitrary or unreasonable, against the overwhelming weight of the evidence, or shows passion, bias, or prejudice so as to shock the conscience of the court." *Warren v. Derivaux*, 996 So. 2d 729, 737-38 (¶25) (Miss. 2008) (citations omitted).

¶47. Gordon argues that the county court failed to make the "specific threshold findings of fact to support an award of punitive damages." Specifically, he claims that the record does not "support the claim of malicious or fraudulent intent on [his] part, nor does [it] support the contention that [he] acted with gross negligence which evidences a willful, wanton or reckless disregard for the safety of others." Gordon also contends the court failed to consider the relevant factors outlined in section 11-1-65, particularly his "financial condition and net worth." Lastly, he claims that Dickerson did not introduce any evidence that he intended to cause her harm.

¶48. Dickerson alleged in her counterclaims that (1) the roof had leaked for three years; (2) she was "unable to use her washer and dryer in the laundry room during periods where the

19

roof leaked because she was afraid that there would be a fire due to the wet conditions in the room"; (3) the pipes had burst (which she repaired herself in order to have an operable toilet); and (4) she had "resorted to cooking most meals on a grill outside of her home to avoid the dangerous conditions of the kitchen," such as rotting floors and an inoperable oven. As discussed, Gordon did not respond to these claims. As this Court noted in *Leach v. Shelter Ins. Co.*, 909 So. 2d 1283, 1287-88 (¶14) (Miss. Ct. App. 2005), "a defendant, upon default, is held to admit a plaintiff's well-pleaded allegations of fact[,] and that defendant is barred from contesting such facts on appeal." (Citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)).

¶49. During the March 2019 hearing addressing damages, Dickerson's counsel introduced into evidence photographs of the rental home, showing the numerous repair issues, and a condemnation letter from the City of Tupelo dated May 2016, which stated that the house was "in a serious state of demise" with "holes in walls[,] ceilings[, and] floors." The letter noted that the floors and plumbing were "failing" and that there was "rotted wood" and mold in the laundry room and bathroom. Counsel represented to the court that these exhibits reflected the substance of Dickerson's testimony, were she called to testify. Dickerson's brother testified at the hearing that Dickerson had told Gordon about the floors and plumbing and that he had been worried that if he complained to the city, she would be evicted. In her closing arguments, counsel for Dickerson asserted:

> Pipes started to burst causing the floor to start to fall through and the floor joists to rot and the ceiling to start to come down. [Dickerson] was constructively evicted from all of her house, except for her two bedrooms. She could not use her kitchen for fear of falling through the floor.

> She was terrified to use her bathroom because she was afraid she would fall through the floor, and she took very quick showers because she was afraid the tub would go through the floor.
>
> . . . .
>
> And he never fixed these things, and she continued to live in this house despite her health conditions. Ms. Dickerson has COPD, and mold exacerbates her condition.

Given the documentation and descriptions of the home's egregious condition—and of the landlord's continued neglect—we find the record supports an award of punitive damages.

¶50. Furthermore, as to the amount of punitive damages, the county court allowed Gordon "to present his defenses on the merits" and noted in its findings that neither party had "offered any evidence of the defendant's net worth" for the court's consideration. We have held, "If neither party presented evidence of a defendant's net worth at trial, 'neither party may challenge on appeal either the inadequacy or the excessiveness of a punitive damages award.'" *Woodkrest Custom Homes Inc. v. Cooper*, 108 So. 3d 460, 470 (¶43) (Miss. Ct. App. 2013) (quoting *C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1102 (Miss. 1992)); *accord Moore v. McDonald*, 210 So. 3d 563, 568 (¶15) (Miss. Ct. App. 2017) (recognizing defendant's responsibility "to present proof of his net worth and financial condition" in order to mitigate punitive damages). Therefore, any challenges as to the amount of the award is waived on appeal.

## CONCLUSION

¶51. The trial court's careful analysis of Gordon's arguments—including allowing him the extensive opportunity to contest the default—alleviates any supposed procedural wounds in

21

this case. Furthermore, the trial court was correct in holding it has discretion to allow counterclaims via the expansive language outlined in Rule 13(k). Additionally, taking into account the circuit court's detailed analysis of the nature and legitimacy of the reasons for default, the lack of a colorable defense by Gordon and the prejudicial effect the plaintiff may suffer if the default judgment is set aside, we find no abuse of discretion in declining to set aside the default. Last, the award of punitive damages was supported by substantial evidence. Accordingly, the circuit court's judgment is **AFFIRMED**.

**WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. BARNES, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., AND GREENLEE, J.; WILSON, P.J., JOINS IN PART. EMFINGER, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, P.J.; CARLTON, P.J., JOINS IN PART.**

**BARNES, C.J., DISSENTING:**

¶52. Although I agree with the lead opinion that Dickerson's counterclaims were not time-barred under Mississippi Rule of Civil Procedure 13(k), I respectfully dissent from its determination that the county court's entry of a default judgment was proper. Given the unique procedural history of this case, I find that Gordon was not required to file any responsive pleading as would normally be required under Rule 12(a) of the Mississippi Rules of Civil Procedure. Therefore, the county court erred in its initial ruling that the clerk's entry of default was proper and in denying Gordon's motion to set aside the default judgment. The circuit court further erred in upholding the county court's decision. Accordingly, I would reverse and remand to the circuit court for further proceedings consistent with this opinion.

**DISCUSSION**

22

¶53. The county clerk filed an entry of default against Gordon in January 2019. At the March 2019 hearing on Dickerson's motion for default judgment, the county court ruled that Gordon's failure to respond to Dickerson's counterclaims and motion for a default judgment was an admission of liability, and the hearing was solely to address damages. The county court subsequently denied Gordon's motion to set aside the default judgment, and the circuit court affirmed the county court's ruling. Gordon argues the default judgment was an error because Dickerson's counsel "never filed a motion to require additional written pleadings"; nor was there any order issued by the county court.

¶54. Mississippi Rule of Civil Procedure 55(c) distinguishes between a clerk's entry of default and a trial court's judgment by default, as well as the different standards for setting those aside. "A clerk's entry of default is an 'interlocutory step that is taken under Rule 55(a) in anticipation of a final judgment by default under Rule 55(b).'" *Tucker v. Williams*, 198 So. 3d 299, 307 (¶14) (Miss. 2016) (quoting 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2692 (3d ed. 1998)). Under Mississippi Rule of Civil Procedure 55(c), the trial court may set aside an *entry of default* "for good cause shown" by the defending party.

¶55. At the hearing, the county court determined that Gordon was "precluded procedurally" from challenging liability because he had not filed any response to Dickerson's counterclaims. The county court also concluded in its final order for default judgment that the clerk's entry of default was "proper," reasoning:

> Again, [Gordon] took no action. I don't know why he took no action, but he's not really offered any excuses as to why he took no action. But like I said, it

23

may just go back to him not having an attorney.

But whatever the reason was, he certainly hasn't offered, in this [c]ourt's view, any reasonable excuse why he didn't respond to the request for a default judgment.[8]

Gordon argued in his motion to set aside the judgment that he was deprived of notice that he was required "to file a responsive pleading or that a judgment by default would be rendered against him" if he failed to do so.[9]

¶56. On appeal to the circuit court, Gordon asserted that he was not required to file a written pleading in response to Dickerson's counterclaims, citing Uniform Rule of Circuit and County Court Practice (URCCC) 5.07 and *Sorey v. Crosby*, 989 So. 2d 485, 487 (¶6) (Miss. Ct. App. 2008). Our Court held in *Sorey* that "[o]n appeal from a justice of the peace to the circuit court, the case shall be tried anew, in a summary way, without pleadings in writing." *Id*. (quoting *Lucedale Comm. Co. v. Strength*, 163 Miss. 346, 353, 141 So. 769, 769 (1932)).[10]

¶57. I agree with the circuit court's analysis that Rule 5.07 and *Sorey* are not to be read quite "so broadly":

---

[8] The county court's ruling is in accordance with the advisory committee notes of Rule 55, which provide that "[a]fter entry of default by the clerk, defendant has no further standing to contest the actual factual allegations of the plaintiff's claim for relief."

[9] Gordon was relying on language in Rule 5 of the Mississippi Rules of Civil Procedure: "No service need be made on parties in default for failure to appear *except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided in Rule 4 for service of summons*." (Emphasis added). As the county court correctly noted in its order, when Dickerson filed her counterclaims, Gordon was not yet in default for failure to appear; so Rule 5 would not have been applicable.

[10] *Lucedale* pre-dates our rules of civil procedure.

Appeals from justice court under Rule 5.07 proceed as if a complaint and answer has been filed. In other words, there is no need for the parties to file either of these two pleadings. The notice of appeal suffices to vest the appellate court – in this case the county court – with jurisdiction to try the case *de novo*. *Sorey* reinforces this interpretation. There, the Soreys "were prevented from developing facts related to a separate cause of action between the Soreys and Crosbys . . . . Any dispute as to the facts that led to Crosby obtaining the deed of trust and subsequent foreclosure was not properly brought before the [trial] court." *Sorey*, 989 So. 2d at 487.

However, the circuit court further determined:

As affirmed above, Dickerson's counter-claims were properly brought before the county court as a pleading subsequent to the complaint. Pursuant to [URCCC] 5.07, "all proceedings on an appeal de novo will be governed by the Mississippi Rules of Civil Procedure, where applicable, the Mississippi Rules of Evidence, and these Rules." *The Mississippi Rules of Civil Procedure, in turn, provide that "[t]he plaintiff shall serve his reply to a counter-claim . . . within thirty days after service . . . ." M.R.C.P. 12(a).*

(Emphasis added). I find the circuit court's ruling on this particular point to be plain error.

The circuit court omitted (using ellipses) crucial and, in this case, dispositive language from Rule 12(a). Specifically, Rule 12(a) states that "[t]he plaintiff shall serve his reply to a counter-claim ***in the answer*** within thirty days after service ***of the answer or, if a reply is ordered by the court, within thirty days after service of the order, unless the order otherwise directs***." (Emphasis added).[11] Dickerson's counterclaims were not contained in an answer, nor was there an order from the county court requiring Gordon to reply to the counterclaims. *Accord Saddler v. Saddler*, 556 So. 2d 344, 345 (Miss. 1990) (recognizing that an "entry of default was improper since no answer was required to be filed by the

---

[11] By comparison, Federal Rule of Civil Procedure 12(a)(1)(B) simply provides: "A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with *the pleading that states the counterclaim or crossclaim*." (Emphasis added).

defendant unless ordered by the court" under Rule 81(d)). Therefore, because Gordon was not required to file a reply to Dickerson's pleading, I find the county court erred in ruling that the clerk's entry of default was "proper."

¶58. For this reason, I would also find that the county court erred in denying Gordon's motion to set aside the default judgment. The lead opinion has thoroughly addressed the "three-prong test" utilized in determining whether to set aside a default judgment, as articulated by the Mississippi Supreme Court: "the nature and legitimacy of the defendant's reasons for his default, i.e. whether the defendant has good cause for default"; "whether there is a colorable defense to the merits of the claim"; and "the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set aside." *BB Buggies Inc. v. Leon*, 150 So. 3d 90, 101 (¶23) (Miss. 2014). Yet this standard presupposes that the defendant was in default; here he was not.

¶59. A trial court's "decision to grant or deny a motion to set aside a default judgment" is reviewed "only for an abuse of discretion." *Villavaso v. S.H. Anthony Inc.*, 309 So. 3d 587, 595 (¶25) (Miss. Ct. App. 2020) (citing *Am. States Ins. Co. v. Rogillio*, 10 So. 3d 463, 467 (¶8) (Miss. 2009)). However, if a trial court's decision to grant or deny a motion to set aside a default judgment "was based on an error of law, then we will reverse." *Tucker*, 198 So. 3d at 309 (¶24). Given the unique procedural facts of this case, I find that the clerk's entry of default and the court's judgment of default should not have been entered because Gordon was not required under the rules to file any response. Accordingly, I would reverse the circuit court's affirmance of the county court's judgment of default and remand to the circuit

court for further findings in accordance with this opinion.[12]

**CARLTON, P.J., AND GREENLEE, J., JOIN THIS OPINION. WILSON, P.J., JOINS THIS OPINION IN PART.**

**EMFINGER, J., DISSENTING:**

¶60. This appeal is from the entry of a default judgment against Gordon, in favor of Dickerson, in the amount of $50,000.[13] The basis of the default judgment was Gordon's failure to timely file a reply to counterclaims filed by Dickerson. Gordon argued in both the county and circuit courts, and now argues here on appeal, that the entry of default against him was improper because the counterclaims were untimely filed. He argues that because no reply to the counterclaims was required, he was not in default. I would find that Dickerson's counterclaims were not properly before the county court and that no responsive pleading by Gordon was required. Accordingly, because I would reverse the circuit court's ruling and set aside the entry of default and the default judgment, I dissent.

¶61. This case began with Gordon filing a complaint against Dickerson in justice court. Dickerson was served with a copy of the complaint and summons; however, pursuant to Rule 14 of the Uniform Rules of Procedure for Justice Court, Dickerson was not required to file, and did not file, an answer. After suffering an adverse ruling, on September 12, 2016, an

---

[12] As a result, this Court need not address Gordon's remaining assignment of error with regard to the punitive-damage award. *See McCain v. Dauzat*, 791 So. 2d 839, 843 (¶13) (Miss. 2001) (declining to address allegation that a punitive-damage award was invalid and not supported by the evidence due to the decision to remand for a new hearing on the motion to set aside the default judgment).

[13] The lead opinion's discussion concerning the alleged contract and the alleged underlying facts is not relevant to this Court's determination as to whether Gordon was in default.

attorney for Dickerson filed a notice of appeal to county court for a trial de novo. Concerning such appeals, the Uniform Rules of Circuit and County Court Practice stated in part:

> In appeals by trial de novo, the circuit court clerk, upon the filing of the written notice of appeal, must enter the case on the docket, noting that it is an appeal with trial de novo. *The appeal will proceed as if a complaint and answer had been filed*, but the court may require the filing of any supplemental pleading to clarify the issues. All proceedings on an appeal de novo will be governed by the Mississippi Rules of Civil Procedure, where applicable, the Mississippi Rules of Evidence, and these Rules.

URCCC 5.07 (emphasis added). Further, concerning such appeals, the supreme court said in *Statham v. Miller*, 988 So. 2d 407, 410 (¶11) (Miss. Ct. App. 2008):

> Our appellate courts have interpreted section 11-51-91 to provide that appeals from justice court to circuit court are to proceed by trial de novo. *See, e.g.*, *Franklin Collection Serv. v. Stewart*, 863 So. 2d 925, 929 (¶10) (Miss. 2003); *Walker v. Benz*, 914 So. 2d 1262, 1267 (¶15) (Miss. Ct. App. 2005) (citation omitted); *see also* URCCC 5.01 ("Direct appeals from justice court and municipal court shall be by trial de novo."). The appeal proceeds in the circuit court "as if a complaint and answer had been filed . . . ." URCCC 5.07. Further, the proceedings on appeal to the circuit court are "governed by the Mississippi Rules of Civil Procedure, where applicable . . . ." *Id*.

Thus, the Mississippi Rules of Civil Procedure governed the proceedings after the appeal was perfected.

¶62. After Dickerson filed the notice of appeal, no further action was taken until May 18, 2018, when the clerk sent a notice of intent to dismiss the case as stale. In response to the clerk's notice, on June 11, 2018, twenty-one months after the notice of appeal was filed, Dickerson filed a pleading titled "Appellant's Counterclaims for Breach of Contract, Fraudulent Misrepresentation, Trespass and Wrongful Possession, Unjust Enrichment, and

28

in the Alternative for Breach of the Implied Warranty of Habitability, Breach of the Implied Covenant of Quiet Enjoyment, and Constructive Eviction." The issues created by this filing will be addressed below.

## I. The pleading was not in proper form as required by the Mississippi Rules of Civil Procedure.

¶63. In *Keyes v. Berry*, 995 So. 2d 861, 864-65 (¶19-20) (Miss. Ct. App. 2008), this Court held that a counterclaim that was not asserted in a responsive pleading was not properly before the court and stated:

> As the Appellees correctly point out, "a 'counterclaim' is a claim asserted against a party opposite in *a responsive pleading*." Jeffrey Jackson, Mississippi Civil Procedure § 5:20 (2008) (citing M.R.C.P. 13(a) and (b)) (emphasis added). Mississippi Rule of Civil Procedure 7 addresses the pleadings allowed. Rule 7 provides in pertinent part that:
>
> > (a) *Pleadings*. There shall be [1] a complaint and [2] an answer; [3] a reply to a counterclaim denominated as such; [4] an answer to a cross-claim, if the answer contains a cross-claim; [5] a third-party complaint, if a person who is not an original party is summoned under the provisions of Rule 14; and [6] a third-party answer, if a third-party complaint is served. ***No other pleading shall be allowed***, except that the court may order a reply to an answer or a third-party answer.
>
> M.R.C.P. 7(a) (emphasis added).
>
> Keyes was required to assert his counterclaim in a responsive pleading, in this case an answer.

Dickerson's filing on June 11, 2018, was not asserted in a responsive pleading (an answer or amended answer) and is not one of the enumerated pleadings "allowed" in Rule 7.

¶64. The filing of counterclaims in this case was also subject to the provisions of Mississippi Rule of Civil Procedure 13(k), which reads as follows:

When an action is commenced in the justice court or in any other court which is not subject to these rules and from which an appeal for a trial de novo lies to a court subject to these rules, any counter-claim made compulsory by subdivision (a) of this rule ***shall be stated as an amendment to the pleading*** within thirty days after such appeal has been perfected or within such further time as the court may allow; and other counter-claims and cross-claims shall be permitted as in an original jurisdiction action. When a counter-claim or cross-claim is asserted by a defendant in such an appealed case, the defendant shall not be limited in amount to the jurisdiction of the lower court but shall be permitted to claim and recover the full amount of its claim irrespective of the jurisdiction of the lower court.

(Emphasis added). The above rule requires that compulsory counterclaims "*shall be stated as an amendment to the pleading.*" *Id*. (emphasis added). Concerning the use of the word "shall," the supreme court said in *Poindexter v. Southern United Fire Ins. Co.*, 838 So. 2d 964, 971 (¶30) (Miss. 2003):

Unless and until the Mississippi Rules are altered, we prefer to exercise judicial restraint and to hold that "shall" means "shall," not "shall sometimes." *See, e.g., Ivy v. Harrington*, 644 So. 2d 1218, 1221 (Miss. 1994):

The operative word of § 93-9-21 is "shall." A basic tenet of statutory construction constrains us to conclude that, unlike the discretionary nature of "may," **the word "shall" is a mandatory directive**. . . . ([E]mphasis added).

Pursuant to *Keyes*, Rule 7(a), and Rule 13(k), to be properly before the court, Dickerson's counterclaims should have been asserted in an amended answer.

## II.   The counterclaims were not timely filed.

¶65.   Pursuant to Rule 13(k), the compulsory counterclaims should have been asserted in an amended answer and filed within thirty days of the date the appeal was perfected. Because they were not filed within the thirty-day period, I would find that Rule 13(k) required leave of court to be granted before the filing of an amended pleading containing the

counterclaims. While this is a case of first impression concerning the interpretation of Rule

13(k), we have a similar rule that gives us guidance. Concerning the amendment of

pleadings, Mississippi Rule of Civil Procedure 15(a) states:

> A party may amend a pleading as a matter of course at any time before a responsive pleading is served, or, if a pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within thirty days after it is served . . . . ***Otherwise a party may amend a pleading only by leave of court or upon written consent of the adverse party***.

(Emphasis added). In every other case where the Mississippi Rules of Civil Procedure are

applicable, an answer may be amended to assert counterclaims, without leave of court, within

thirty days after service of the answer. *Id*. However, any amendment after that thirty-day

period requires leave of court.[14]

¶66. Rule 13(k) was obviously added to our rules to address the problem of moving from

a court that is not subject to the Mississippi Rules of Civil Procedure to a court that is subject

to the rules, and there is no federal counterpart. Compulsory counterclaims must be set out

in the answer, or the counterclaims may be barred by the doctrines of res judicata or collateral

estoppel. M.R.C.P. 13(a). Because justice court is not subject to the Mississippi Rules of

Civil Procedure and does not require the filing of an answer or other written pleading, Rule

13(k) provides a process for compulsory counterclaims to be raised in the appeal de novo and

thereby avoids the procedural bar contained in Rule 13(a). Pursuant to Rule 13(k), the

defendant in justice court who was not required to file an answer and/or raise compulsory

---

[14] Dickerson makes an alternative argument that her counterclaims were not compulsory. However, it is clear that if her counterclaims were not compulsory, Rule 15 would require leave of court be given before their filing.

31

counterclaims is given thirty days after the appeal is perfected to file an amended answer and assert the compulsory counterclaims therein, without first obtaining leave of court. After that thirty-day period, interpreting Rule 13(k) to require leave of court before filing an amended answer containing compulsory counterclaims would be consistent with the requirements of Mississippi Rule of Civil Procedure 15 and achieve the purpose of avoiding the procedural bar found in Rule 13(a).

¶67. The lead pinion places great emphasis on the "expansive language" of Rule 13 and the "broad discretion" it gives to the trial courts. However, as noted above, interpreting Rule 13(k) to be consistent with Rule 15 does nothing more or less than put appeals that arise from courts that are not subject to the Mississippi Rules of Civil Procedure on the same footing as all other cases. Once this case was appealed to county court, the Mississippi Rules of Civil Procedure were applicable to every filing thereafter. In fact, as noted above, the bars found in Rule 13(a) are what necessitated the adoption of Rule 13(k).

### III. No response to the filing was required.

¶68. Generally, Mississippi Rule of Civil Procedure 12(a) sets out the times for responsive pleadings as follows:

> A defendant shall serve his answer within thirty days after the service of the summons and complaint upon him or within such time as is directed pursuant to Rule 4. A party served with a pleading stating a cross-claim against him shall serve an answer thereto within thirty days after the service upon him. *The plaintiff shall serve his reply to a counter-claim **in the answer** within thirty days after service of the answer or, if a reply is ordered by the court, within thirty days after service of the order, unless the order otherwise directs*.

(Emphasis added). In the present case, the counterclaims were not contained in the answer

32

or amended answer. Further, there was no order from the court requiring a reply to the counterclaims. Therefore, there is no requirement found in Rule 12 that Gordon file a reply to the June 11, 2018 filing by Dickerson. Also, Rule 15(a) states:

> A party shall plead ***in response to an amended pleading*** within the time remaining for response to the original pleading or within ten days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

(Emphasis added). Rule 15 therefore anticipates the filing of an amended answer with counterclaims, but no amended answer was filed in this case. Accordingly, Rule 15 did not require that Gordon file a response to the June 11, 2018 filing by Dickerson. Again, because there is no rule, statute, or order that required Gordon to file a reply to Dickerson's June 11, 2018 filing, I would find that Gordon was not in default and that the entry of default and default judgment should be set aside.[15] It is important to note that had Dickerson filed a proper pleading pursuant to Rules 7(a) and 13(k), a reply would have been required by one of the rules set forth above.

¶69. Because this is a case of first impression, I would further find that Rule 13(k) required Dickerson to assert her counterclaims in an amended answer within thirty days of the perfection of her appeal. In the alternative, after the thirty-day period, I would find that Rule 13(k) required Dickerson to first obtain leave of court before filing an amended answer asserting her counterclaims. Because neither of these alternatives occurred, the

---

[15] The lead opinion simply notes that a "failure to respond to a counterclaim can be the basis for a default judgment" without citing any rule that required a response or provided a time within which Gordon's response was due. Without a rule requiring a response, there can be no default on that basis.

counterclaims were not properly before the court, and there was no reply to the counterclaims due from Gordon. Accordingly, Gordon was not in default, the county court erred in granting a default judgment, and the circuit court erred in affirming the county court's ruling in this regard.[16]

¶70. I would reverse the circuit court's decision to affirm the granting of a default judgment, vacate the entry of default and the default judgment, and remand the matter to circuit court for further proceedings consistent with this opinion.

**WILSON, P.J., JOINS THIS OPINION. CARLTON, P.J., JOINS THIS OPINION IN PART.**

---

[16] Because I find that Gordon was not in default, there is no need to conduct an analysis using the "three-prong test" to determine whether the default judgment should be set aside.